Ralph R. TOM, Appellant,

v.

William SUTTON, Jailor, Whatcom County, et al., Appellees.

No. 75–1551.

United States Court of Appeals, Ninth Circuit.

March 10, 1976.

Steven G. Sisson (argued), Bellingham, Wash., for appellant.

Barry D. Ernstoff (argued), Seattle, Wash., for appellees.

## OPINION

Before KOELSCH and WALLACE, Circuit Judges, and TAYLOR,* District Judge.

FRED M. TAYLOR, District Judge:

This is an appeal from an order of the United States District Court, Western District of Washington, dismissing appellant's petition for writ of habeas corpus. Appellant, an enrolled member of the Lummi Indian Tribe, entered a plea of guilty to driving a motor vehicle without a valid operator's license within the boundaries of the Lummi Reservation in violation of the Lummi Law and Order Code. Appellant was sentenced to a ten-day jail sentence by the Lummi Indian Tribal Court and, while incarcerated, filed his petition for writ of habeas corpus under and pursuant to Title 25, U.S.C. § 1303.

The sole issue raised by appellant is whether he had the right to the assistance of appointed counsel in the criminal proceedings before the Tribal Court. The district court determined that he did not have such a right and we agree.

In *Settler v. Lameer,* 507 F.2d 231 (1974), this Court held that neither the Sixth nor the Fourteenth Amendment to the United States Constitution requires Indian tribal courts to provide members of their tribe with representation by professional counsel in proceedings before the tribal court. This holding is consistent with other judicial decisions finding the Consti-

---

* Honorable Fred M. Taylor, United States District Judge for the District of Idaho, sitting by designation.

tution inapplicable to Indian tribes, Indian courts and Indians on the reservation. See *Talton v. Mayes,* 163 U.S. 376, 16 S.Ct. 986, 41 L.Ed. 196 (1896); *McCurdy v. Steele,* 506 F.2d 653 (10th Cir. 1974); *Glover v. United States,* 219 F.Supp. 19 (D.C.Mont.1963). The rationale underlying these cases is that the Indian tribes are quasi-sovereign nations. *McClanahan v. Arizona State Tax Commission,* 411 U.S. 164, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973); *United States v. State of Washington,* 520 F.2d 676 (9th Cir. 1975).[1] Although an individual citizen's right to appointed counsel is protected under the Sixth and Fourteenth Amendments in criminal actions brought by the United States and the individual states thereof, Indians on the reservation do not have such protection under the federal constitution when the criminal action is brought under tribal law in the tribal court. Under their sovereign status, the Indian tribes are vested with the inherent power to create and administer a criminal justice system, *Ortiz-Barraza v. United States,* 512 F.2d 1176 (9th Cir. 1975), and the power to adopt their own constitution and enact laws. 25 U.S.C. § 476 (1970).

The power of the Indian tribes to govern their own affairs is limited by treaty and the plenary power of Congress. *Winton v. Amos,* 255 U.S. 373, 41 S.Ct. 342, 65 L.Ed. 684 (1921); *Wounded Head v. Tribal Council of Oglala Sioux Tribe,* 507 F.2d 1079 (8th Cir. 1975). In 1968, Congress enacted the Indian Civil Rights Act, 25 U.S.C. § 1302, often called the "Indian Bill of Rights", which restricts the governmental powers of Indian tribes and guarantees certain rights to those individuals falling under the jurisdiction of the tribes.[2]

Appellant argues that the due process language of the Indian Civil Rights Act, as found in 25 U.S.C. § 1302(8), necessarily requires the tribal courts to appoint professional defense counsel for indigent criminal defendants appearing before the Lummi Tribal Court. Appellant's interpretation ignores the first principle of statutory construction which is to construe the language of an enactment so as to give it the effect Congress intended. *United States v. American Trucking Associations,* 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). While the statute does require the Indian tribes to

---

1. Even though Congress enacted legislation in 1924 making persons born to a member of an Indian tribe nationals and citizens of the Unites States (8 U.S.C. § 1401), that Act did not destroy the existence or sovereignty of the Indian tribes or their jurisdiction over their members. *Iron Crow v. Oglala Sioux Tribe,* 231 F.2d 89 (8th Cir. 1956).

2. Title 25, U.S.C. § 1302 states:
"No Indian tribe in exercising powers of self-government shall—
(1) make or enforce any law prohibiting the free exercise of religion, or abridging the freedom of speech, or of the press, or the right of the people peaceably to assemble and to petition for a redress of grievances;
(2) violate the right of the people to be secure in their persons, houses, papers, and effects against unreasonable search and seizures, nor issue warrants, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized;
(3) subject any person for the same offense to be twice put in jeopardy;
(4) compel any person in any criminal case to be a witness against himself;

(5) take any private property for a public use without just compensation;
(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;
(7) require excessive bail, impose excessive fines, inflict cruel and unusual punishments, and in no event impose for conviction of any one offense any penalty or punishment greater than imprisonment for a term of six months or a fine of $500, or both;
(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
(9) pass any bill of attainder or ex post facto law; or
(10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons."

afford due process of law in 25 U.S.C. § 1302(8), it specifically provides in 25 U.S.C. § 1302(6) that no Indian tribe shall:

> "deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense; . . ."

The clear import of the statute is that a criminal defendant may be represented by counsel but only at his own expense.

This interpretation is further supported by the legislative history of the Indian Civil Rights Act. In 1965, Senator Ervin introduced a bill which would have restricted the Indian tribes, in exercising their powers of local self-government, to the same extent as imposed on the United States government by the United States Constitution. However, when hearings on this bill before the subcommittee of the Senate Judiciary Committee were convened, representatives of various Indian tribes appeared in opposition to the adoption of the federal constitution *in toto*.[3] As a result of the objections to Senator Ervin's bill, the Department of the Interior submitted a substitute bill which guaranteed only specific enumerated rights to the Indians. The Solicitor for the Department of the Interior, Mr. Frank Barry, testified before the subcommittee in part as follows:

> "Note also in subsection (h) of section 2 of the proposed bill, in order to eliminate the possibility that the courts might hold in those cases in which Indian tribal courts have jurisdiction that the courts will be required to provide counsel in the case of indigent defendants, we have

specified that the assistance of counsel will be provided at the expense of the Indian defendant. There are several reasons for this. One is that there are no attorneys on the reservations, neither prosecuting attorneys nor defense attorneys, and there would be no bar over which the court has jurisdiction from which it could select attorneys and over which it would have authority to say to an attorney, 'You must represent this litigant.' Accordingly, until a situation obtains where lawyers would be available, we think that it should not be required that the Indian tribes provide defense counsel."[4]

The subcommittee endorsed the substitute bill and, in its summary of the report, stated:

> "'The Department of Interior's bill would, in effect impose upon the Indian governments the same restrictions applicable presently to the Federal and State governments with several notable exceptions, viz., the 15th amendment, certain of the procedural requirements of the 5th, 6th, and 7th amendments, and, in some respects, the equal protection requirement of the 14th amendment.'"

■ The summary of the report was subsequently adopted and endorsed by the Senate Judiciary Committee. It is clear from the legislative history, as well as from the language of the statute, that Congress in enacting the Indian Bill of Rights did not intend to require the Indian tribal courts to provide counsel for indigent defendants in criminal cases. Since 25 U.S.C. § 1302(6) specifically provides that a person may have counsel at his own expense, the due process of law language used in § 1302(8) cannot be construed to mean that a person is entitled to appointed counsel.[5] The legal maxim of

---

3. See *Hearings on S.961, S.962, S.963, S.964, S.966, S.967, S.968, S.J.Res.40, To Protect the Constitutional Rights of American Indians Before the Subcommittee on Constitutional Rights of the Senate Committee, 89th Cong., 1st Sess.* (1965).

4. Id. at p. 21. Among other arguments given at the subcommittee hearings against appointed counsel was that the tribes were not financially

prepared to pay for counsel should this burden fall on them. Id. at p. 340-41.

5. We note in passing that the courts have been careful to construe the terms "due process" and "equal protection" as used in the Indian Bill of Rights with due regard for the historical, governmental and cultural values of an Indian tribe. As a result, these terms are not always given the same meaning as they have come to

statutory construction *expressio unius est exclusio alterius* is applicable here.

In 1970, the Commissioner of Indian Affairs approved the Lummi Tribal Constitution which had previously been adopted by the tribe pursuant to 25 U.S.C. § 476. Appellant argues that irrespective of the Indian Bill of Rights enacted by Congress, Article VIII of the Lummi Tribal Constitution guarantees him the right to appointed counsel. Article VIII provides in part:

"All members of the Lummi Indian Tribe shall be accorded equal rights pursuant to tribal law. No member shall be denied any of the rights or guarantees enjoyed by non-Indian citizens under the Constitution of the United States, including, but not limited to, freedom of religion and conscience, freedom of speech, the right to orderly association of assembly, the right to petition for action or the redress of grievances, and due process of law. No member shall be denied any of the rights or guarantees as provided in Title II of Public Law 90–284—the Act of April 11, 1968 (82 Stat. 77 and 78) as follows:

No Indian tribe in exercising powers of self-government shall—

   \*    \*    \*    \*    \*    \*

(6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense;

   \*    \*    \*    \*    \*    \*

(8) deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law;
. . ."

Appellant's argument is based on the holding of the Supreme Court in *Argersing-er v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), that the Sixth Amendment right to counsel applies to indigent defendants who are charged with "petty offenses" (punishable by imprisonment up to six months), as well as those charged with "serious offenses". Appellant concludes that since non-Indian citizens charged with petty offenses have a right to appointed counsel in federal and state courts under the Constitution of the United States, members of the Lummi Tribe charged with offenses which subject them to imprisonment up to six months, 25 U.S.C. § 1302(7) have a like right to counsel in Tribal Court under the Lummi Constitution. We disagree.

■■■ In interpreting a constitutional provision, the fundamental principle of construction is to give the provision the effect intended by the framers and the people adopting it. *Whitman v. National Bank of Oxford,* 176 U.S. 559, 20 S.Ct. 477, 44 L.Ed. 587 (1900). The obvious intent of the Lummi Tribe by their constitution was not to provide counsel for indigent defendants. *Argersinger v. Hamlin,* supra, was decided in 1972, two years after the Tribe adopted its Constitution. Prior to 1972, the interpretation given the right to counsel, as set forth in *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), by most jurisdictions, was that the right attached only when "serious" crimes were involved. It was not until *Argersinger* that it was clearly established that the right existed in all cases where imprisonment was possible. It is therefore clear that the Lummi Tribe did not intend to provide defense counsel at tribal expense.

■■■ Other rules of constitutional construction lead to a like interpretation of the right to counsel under the Lummi Constitution. Every provision in a constitution must be interpreted in the light of the entire document; *Richardson v. Ramirez,* 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974); *Townsend v. Edelman,* 518 F.2d 116

---

represent under the United States Constitution. See *Howlett v. The Salish and Kootenai Tribes,* 529 F.2d 233 (9th Cir. 1976); *McCurdy v.* *Steele,* supra; *O'Neal v. Cheyenne River Sioux Tribe,* 482 F.2d 1140 (9th Cir. 1973); *Groundhog v. Keeler,* 442 F.2d 674 (10th Cir. 1971).

(7th Cir. 1975); and all constitutional provisions are of equal dignity and, if possible, should be construed in harmony with each other. *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed.2d 511, 53 A.L.R.2d 1008 (1956). The Lummi Tribal Constitution, Article VIII, gives its members co-equal rights with those citizens off the reservation, but also specifically adopts the provisions of the Indian Bill of Rights in regard to the right to counsel.

In order to render all of the provisions of Article VIII operative, we are required to find that the Lummi Tribe, by adopting the Indian Bill of Rights, intended to place limitations on certain rights, including the right to counsel, afforded under the co-equal rights provision of Article VIII.

■ Lastly, in defining the purpose, scope and operative effect of a state constitution, federal courts should accept the interpretation of the courts of that state unless there are federal constitutional questions involved. *Reitman v. Mulkey,* 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); *Reed v. Rhay,* 323 F.2d 498 (9th Cir. 1963), cert. den. 377 U.S. 917, 84 S.Ct. 1184, 12 L.Ed.2d 187 (1963). In our opinion, like deference should be given to tribal courts in regard to their interpretation of tribal constitutions. The Lummi Tribal Court has interpreted Article VIII of the Lummi Tribal Constitution as permitting a person to have the assistance of counsel only at his own expense. We accept and agree with that construction.

The Order of the District Court is Affirmed.