Doreen **RANDALL**, Plaintiff-Appellant,

v.

**YAKIMA NATION TRIBAL COURT, and, Davis Washines, Chief of Police for the Yakima Nation, sub. nom., Defendants–Appellees.**

No. 87–3642.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 4, 1988.

Decided March 1, 1988.

Doreen Randall, Brownstown, Wash., for plaintiff-appellant.

Pat Cockrill, Cockrill, Weaver & Bjur, D.S., Yakima, Wash., for defendants-appellees.

Before WRIGHT, ALARCON and POOLE, Circuit Judges.

ALARCON, Circuit Judge:

Doreen Randall, a member of the Yakima Indian Nation, appeals from the order of the district court dismissing her petition for a writ of habeas corpus filed pursuant to section 203 of the Indian Civil Rights Act, 25 U.S.C. §§ 1301–1303 (1982). We must decide whether the Yakima Nation Court of Appeals violated the Indian Civil Rights Act when it dismissed Randall's appeal solely because the tribal trial court failed to rule timely on her in forma pauperis motion.

## PROCEDURAL BACKGROUND

Randall was employed as a field representative for the Yakima Nation's maternal health care program. On July 3, 1985, Randall was convicted of embezzlement in violation of section 10.10.61 of the Revised Yakima Code in the Yakima Nation Tribal Court. She was sentenced to serve 90 days in jail, with 89 days suspended provided that she agreed to pay a fine of $10 to the tribal court and $17 as restitution to her employer.

On the same date, Randall filed a notice of appeal to the Yakima Nation Court of Appeals. Section 3.01.45 of the Revised Yakima Code provides that "[a]ny party aggrieved by a final judgment ... of the Tribal Court ... shall be entitled to appeal to the Court of Appeals, provided that a notice of appeal is filed ... within ten (10) days after judgment is entered." Together with the notice of appeal, Randall filed a motion supported by an affidavit in which she requested that the $60.00 appellate filing fee required by section 3.01.45(5) of the Revised Yakima Code be waived. Randall alleged that she could not pay the filing fee

because she was unemployed. The tribal court judge did not rule on Randall's motion within 10 days of the entry of judgment.

On July 25th, 1985, 12 days after the 10–day period for perfecting the appeal had expired, the prosecution moved to dismiss Randall's appeal because she had not paid the filing fee. The prosecution contended Randall was not entitled to proceed in forma pauperis because she had misrepresented her employment status. The prosecutor noted that Randall's "[a]ffidavit to proceed In Forma Pauperis states that ... [she] is without a job (unemployed) and on the stand at trial and under oath she claimed to be employed."

In response to the motion to dismiss her appeal, Randall's attorney filed an affidavit in which he explained Randall's employment status:

[D]uring trial ... Ms. Randall indicated that she would lose her job as a result of not having a Washington state Driver's license. Further, Ms. Randall indicated during trial that she may lose her job as a result of these allegations and conviction.

At the time of trial, Ms. Randall had a job with Maternal Health Care services with the Yakima Nation and the BIA (Bureau of Indian Affairs.)

As of July 10, 1985 I personally called the Maternal Health Care Services and was told that Ms. Doreen Randall, the above-mentioned defendant does no longer work at that program.

This affidavit is in response to the prosecution's statement that Ms. Randall lied about her economic status or employment.

The prosecution did not present any evidence that Randall was employed *after* her conviction for embezzlement of her employer's funds.

The tribal court judge did not schedule an evidentiary hearing to resolve the controversy over Randall's employment status. Instead, on July 26, 1985, thirteen days after the time for paying the fee had expired, the judge ruled that he would "leave it [the motion] up to [the] court of ap-

peals." Randall's sentence was stayed by the tribal court judge pending the decision of the Yakima Nation Court of Appeals.

Oral argument in the Yakima Nation Court of Appeals was scheduled for March 13, 1986. Randall submitted a second affidavit explaining her inability to pay the filing fee because she was unemployed. During oral argument, the prosecution argued that Randall's appeal should be dismissed for failure to pay the filing fee.

The Yakima Nation Court of Appeals granted the prosecution's motion to dismiss the appeal. The Court of Appeals stated "[t]he rule that this panel announces is that perfection of appeal means timely filing, [and] payment of fees within the time limits and if waivers are sought they must be perfected *and granted* within the time limits set forth...." (Emphasis in original).

Randall filed this habeas corpus action in the district court under the Indian Civil Rights Act claiming that the Yakima Nation violated her right to due process in dismissing her appeal. She also alleged that she was convicted upon insufficient evidence. The district court held that there is no right to an appeal under the Indian Civil Rights Act or the United States Constitution. The district court also found the evidence presented at trial amply supported Randall's conviction.

## DISCUSSION

### A. *Standard of Review*

We review de novo a district court's denial of a petition for writ of habeas corpus. *Newton v. Superior Court*, 803 F.2d 1051, 1055 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987); *Weygandt v. Ducharme*, 774 F.2d 1491, 1492 (9th Cir.1985).

### B. *The Indian Civil Rights Act*

The Indian Civil Rights Act "substantially tracks the precise language of the Bill of Rights portion of the Constitution, thereby acting as a conduit to transmit federal constitutional protections to those individuals subject to tribal jurisdiction." *Red Fox v. Red Fox*, 564 F.2d 361, 364 (9th Cir.1977).

The purpose of the Indian Civil Rights Act is to "'secur[e] for the American Indian the broad constitutional rights afforded to other Americans,' and thereby to 'protect individual Indians from arbitrary and unjust actions of tribal governments.'" *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 61, 98 S.Ct. 1670, 1678, 56 L.Ed.2d 106 (1978) (quoting S.Rep. No. 841, 90th Cong., 1st Sess., 5–6 (1967)).

Section 202(8) of the Indian Civil Rights Act provides, in part, that Indian tribes shall not "deprive any person of liberty or property without due process." In reviewing tribal court procedures to determine if they comport with this due process guarantee, "courts ... [have] correctly sensed that Congress did not intend that the ... due process principles of the Constitution disrupt settled tribal customs and traditions." F. Cohen, *Handbook of Federal Indian Law* 670 (1982 ed.) (footnote omitted); *see Tom v. Sutton*, 533 F.2d 1101, 1104 n. 5 (9th Cir.1976) ("courts have been careful to construe the term[] 'due process' ... with due regard for the historical, governmental and cultural values of an Indian tribe"). Thus, defining the limits of due process protection under the Act "is not an easy process, because ... [due process] concepts are not readily separated from their attendant cultural baggage; due process especially implies a number of particular procedural rights derived from Anglo–American history." F. Cohen, *supra*, at 670 (footnote omitted).

Where the tribal court procedures under scrutiny differ significantly from those "commonly employed in Anglo–Saxon society," *Howlett v. Salish and Kootenai Tribes*, 529 F.2d 233, 238 (9th Cir.1976), courts weigh "the individual right to fair treatment" against "the magnitude of the tribal interest [in employing those procedures]" to determine whether the procedures pass muster under the Act. *Stands Over Bull v. Bureau of Indian Affairs*, 442 F.Supp. 360, 375 (D.Mont.1977), *appeal dismissed*, 578 F.2d 799 (9th Cir.1978); *see also Smith v. Confederated Tribes of Warm Springs*, 783 F.2d 1409, 1412 (9th Cir.1986) ("[f]ederal courts must avoid undue or intrusive interference in reviewing Tribal Court procedures"), *cert. denied*, —— U.S. ——, 107 S.Ct. 465, 93 L.Ed.2d 410; *cf. Howlett*, 529 F.2d at 238 (weighing test applies in determining whether a tribe's election procedures violate equal protection provisions in the Act).

■ Where the tribal court procedures parallel those found "in Anglo–Saxon society," however, courts need not engage in this complex weighing of interests. *Cf. Howlett*, 529 F.2d at 238. Where the rights are the same under either legal system, federal constitutional standards are employed in determining whether the challenged procedure violates the Act. *Cf. id.* ("[w]here ... the Tribes' election and voting procedures are parallel to those commonly employed in Anglo-Saxon society, we then 'have no problem of forcing an alien culture, with strange procedures, on [these tribes]'") (quoting *White Eagle v. One Feather*, 478 F.2d 1311, 1314 (8th Cir. 1973)); *accord Daly v. United States*, 483 F.2d 700, 704 (8th Cir.1973) (same)).

1. *Procedural Due Process*

a. The Appellate Procedures Utilized by the Tribe Would Not Pass Muster Under the Fifth and Fourteenth Amendments.

The due process clauses of the Fifth and Fourteenth Amendments do "not require ... appeals as of right to criminal defendants seeking to review alleged trial court errors." *Evitts v. Lucey*, 469 U.S. 387, 393, 105 S.Ct. 830, 834, 83 L.Ed.2d 821 (1985) (applying the Fourteenth Amendment), *reh'g denied*, 470 U.S. 1065, 105 S.Ct. 1783, 84 L.Ed.2d 841; *see Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977) (applying the Fifth Amendment). However, when a right to appeal is provided, "the procedures used in deciding appeals must comport with the demands of the Due Process ... Clause[ ] of the Constitution." *Evitts*, 469 U.S. at 393, 105 S.Ct. at 834; *accord In re Chessman*, 219 F.2d 162, 165 (9th Cir.1955) ("though a state is not required to give a convicted man the right of appeal, when it does so the appellant must be accorded due

process in the course of the appellate procedure"); *Miracle v. Estelle,* 592 F.2d 1269, 1272 n. 6 (5th Cir.1979) ("it is now a fundamental principle of due process ... that once avenues of appellate review are established, they must be kept free of unreasoned distinctions that can only impede open and equal access to the courts").

The due process clauses of the Fifth and Fourteenth Amendments have been applied in a variety of contexts to assure procedurally fair appeals. *See e.g., Griffin v. Illinois,* 351 U.S. 12, 17–20, 76 S.Ct. 585, 589–91, 100 L.Ed. 891 (1956) (due process may require states to provide indigent criminal defendants with free trial transcripts), *reh'g denied,* 351 U.S. 958, 76 S.Ct. 844, 100 L.Ed. 1480; *Burns v. Ohio,* 360 U.S. 252, 256–58, 79 S.Ct. 1164, 1167–69, 3 L.Ed. 2d 1209 (1959) (due process requires states to waive appellate filing fees for indigent criminal defendants); *Rheuark v. Shaw,* 628 F.2d 297, 302 (5th Cir.1980) ("due process can be denied by any substantial retardation of the appellate process"), *cert. denied sub. nom. Rheuark v. Dallas County,* 450 U.S. 931, 101 S.Ct. 1392, 67 L.Ed.2d 365 (1981).

■ Section 3.01.45 of the Revised Yakima Code allows criminal defendants the right to appeal from criminal convictions in tribal courts. This right is comparable to the right accorded criminal defendants under federal law. *See* Fed.R.App.P. 4(b). Accordingly, under *Howlett,* federal constitutional standards must be employed in determining whether Randall has been denied due process. *Howlett,* 529 F.2d at 238. Under federal due process standards, indigent criminal defendants are entitled to file an appeal without paying a filing fee. *Burns,* 360 U.S. at 256–58, 79 S.Ct. at 1167–69.

■ In dismissing Randall's appeal, the Yakima Nation Court of Appeals noted that the payment of a filing fee is not required if the appellant is an indigent. The Court did not reach the question whether the record supported Randall's request that her appeal be heard without payment of the filing fee. Instead, Randall's appeal was dismissed because the tribal court judge did not rule on her in forma pauperis motion within the statutory time limits for perfecting an appeal under section 3.01.45 of the Revised Yakima Code.

In *Gilbert v. Sowders,* 646 F.2d 1146 (6th Cir.1981), the Kentucky Supreme Court dismissed an appeal because a state court clerk failed to file the record on appeal within 60 days of the filing of the notice of appeal as required under Kentucky law. *Id.* at 1148 (Jones, J., concurring). The Sixth Circuit concluded that dismissal of the appeal because of the *clerk's* nonfeasance violated due process. The court in *Gilbert* reasoned as follows:

Kentucky has, of course, a right to enforce its own rules of procedure, including the unusual requirement that the lawyer see to it that the clerk performs his public obligation.

We cannot, however, avoid the conclusion that the ... Kentucky Supreme Court['s] ... dismissal of the appeal was arbitrary and capricious, and an abuse of due process of law, as protected by the United States Constitution.... [T]he Supreme Court had been fully advised as to the obviously sincere attempt to perfect an appeal and the miniscule nature of the defect.

*Id.* at 1147.

In the instant matter, the Yakima Nation Court of Appeals dismissed Randall's appeal because of the failure of the tribal court judge to perform his duty to rule on her timely in forma pauperis motion. Dismissal under these circumstances, wherein Randall fully complied with the law of the Yakima Nation, was as arbitrary and capricious and as violative of due process of law as the action of the Kentucky Supreme Court condemned in *Gilbert.*

b. The Appellate Procedures Utilized by the Tribe Violated Randall's Right Under the Indian Civil Rights Act.

■ The appellate procedures utilized by the Yakima Nation do not reflect Indian "historical, governmental ... or cultural values." *See Tom,* 533 F.2d at 1104 n. 5. The tribal procedures for perfecting crimi-

nal appeals are Anglo–American in origin as is demonstrated by the requirements of a timely notice of appeal, the payment of a filing fee, and the availability of an in forma pauperis motion. Since these procedures parallel exactly those employed in United States courts, we need not engage in a balancing test to determine whether under the Indian Civil Rights Act Randall's rights to be protected from a deprivation of her liberty without due process of law by the Yakima Nation were violated by dismissal of the appeal by the Yakima Court of Appeals. *See Howlett,* 529 F.2d at 238. Randall's due process rights under the Act were violated in denying her the right of appeal because of the tribal court's failure to rule on her motion to proceed in forma pauperis.

## CONCLUSION

Dismissal of Randall's appeal because of the tribal court's failure to rule on her request to be permitted to pursue her appeal, in the face of the uncontroverted evidence of her indigency, was a violation of federal constitutional standards. Randall should not pay the price for the tribal court judge's failure to perform his duties. If there was a doubt concerning whether Randall was truly indigent at the time she filed her notice of appeal, an evidentiary hearing would have resolved this question. The tribal court judge did not deny her request to proceed in forma pauperis because she was not indigent. The Yakima Nation Court of Appeals did not dismiss the appeal because it determined that she had the funds to pay the filing fee. Instead, dismissal was ordered because of the nonfeasance of the tribal court judge. Moreover, the Yakima Nation Court of Appeals did not rule as it did to further a settled tribal custom or tradition. No evidence was presented that the Yakima Nation as a matter of custom and tradition denies the right of appeal to persons who cannot pay the filing fee.

Because we conclude that Randall was entitled to an appeal from her conviction for embezzlement under the law of the Yakima Nation, we do not reach the question whether the evidence supporting her conviction was sufficient under a substantive due process standard.

We REVERSE the judgment of the district court and REMAND to the district court with directions to remand this matter to the Yakima Nation Court of Appeals to hear Randall's appeal from her embezzlement conviction. The Yakima Nation Court of Appeals may, in its discretion, remand this matter to the tribal court for an evidentiary hearing on Randall's in forma pauperis motion. Randall's appeal may be dismissed for failure to pay the filing fee only if the tribal court finds Randall was not indigent when she filed her in forma pauperis motion.

REVERSED AND REMANDED.