Concurrence by
Judge Kozinski;
Partial Concurrence and Partial Dissent by Judge O’Scannlain
ORDER
The petition for panel rehearing is GRANTED. The opinion and dissent filed on December 8, 2014 and published at 773 F.3d 1011 are withdrawn. They are replaced by the new opinion and dissent filed concurrently with this order. The pending petition for rehearing en banc is DENIED as moot. The parties may file new petitions for panel rehearing or rehearing en banc within 14 days.
OPINION
KOZINSKI, Circuit Judge:
We consider whether an Indian tribe violated a criminal defendant’s rights by failing to inform him that he could receive a jury trial only by requesting one.
FACTS
Fortino Alvarez is an enrolled member of the Gila River Indian Community (the “Community”). In April of 2003, Alvarez (then 20) showed up drunk at the home of his girlfriend (then 15). Following a brief argument, Alvarez struck his girlfriend with a flashlight. When she attempted to retreat, Alvarez pulled a knife. The girlfriend’s brother then stepped outside to confront Alvarez. Alvarez clubbed him too. Alvarez then took his leave, but not before informing his victims that he would soon return to kill their entire family.
Alvarez was picked up by the Community police and charged with assault, domestic violence, criminal threats, and misconduct involving a weapon. According to the Community, Alvarez received a “Defendant’s Rights” form along with the criminal complaint. The Defendant’s Rights form said: “You have the right to a jury trial.” The form didn’t explain what Alvarez needed to do in order to invoke that right.
At a group arraignment, the judge stated that Alvarez had been informed of his rights.[1] The judge then asked Alvarez if he had any questions about those rights. He said that he didn’t. At a bench trial four months later, Alvarez represented himself. He presented no evidence, no witnesses, no case, and no closing argument. When the judge asked Alvarez whether he wished to cross-examine the government’s key witness, Alvarez conceded that everything the witness had said was true. Alvarez was convicted on all counts except making criminal threats. He was sentenced to five years in prison.
Under the Indian Civil Rights Act (ICRA), tribes may not deny criminal defendants facing imprisonment “the right, upon request, to a trial by jury.” 25 U.S.C. § 1302(a)(10). Alvarez sought federal habe-as relief on the theory that the Community had deprived him of that right by failing to inform him that he would only receive a jury upon request. See id. § 1303. The district court denied relief after finding *1027 that Alvarez validly waived his right to a jury trial by failing to request one.
DISCUSSION
1. Exhaustion
We may not exercise jurisdiction over a habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies. See Grand Canyon Skywalk Dev., LLC v. ‘SA’ NYU WA Inc., 715 F.3d 1196, 1200 (9th Cir. 2013). The exhaustion doctrine is rooted in our respect for tribal sovereignty: We are loath to second guess a tribe’s handling of a criminal case unless and until the tribe has had a fair opportunity to review the matter in its own appellate courts. In order to protect tribal sovereignty, we may raise the issue of non-exhaustion sua sponte when the tribe fails to press that defense due to an “inadvertent error.” Day v. McDonough, 547 U.S. 198, 211, 126 S.Ct. 1675, 164 L.Ed.2d 376 (2006). But we may not override a tribe’s “deliberate waiver” of its non-exhaustion defense. Wood v. Milyard, — U.S. —, 132 S.Ct. 1826, 1834, 182 L.Ed.2d 733 (2012); see Day, 547 U.S. at 202, 126 S.Ct. 1675. We have no discretion to raise nonexhaustion on our own initiative when a tribe “strategically withholds]” this defense, “cho[oses] to relinquish it,” makes a “deliberate decision to proceed straightaway to the merits,” or “deliberately steer[s] the [court] away from” the issue. Wood, 132 S.Ct. at 1833-35.
In order to satisfy the exhaustion requirement, a criminal defendant must pursue a direct appeal or show that such an appeal would have been futile. See Jeffredo v. Macarro, 599 F.3d 913, 918 (9th Cir. 2010). Alvarez failed to pursue a direct appeal or show the appeal would have been futile. However, the Community’s response to Alvarez’s habeas petition didn’t argue that this failure presented an exhaustion problem. In our previous opinion, we raised the nonexhaustion defense sua sponte after concluding that there was “no indication in the record that the Community deliberately waived” it. Alvarez v. Tracy, 773 F.3d 1011, 1019 (9th Cir. 2014). After reviewing new information presented in Alvarez’s petition for rehearing and the parties’ supplemental briefs, we now conclude that there is evidence of deliberate waiver.
In its response to Alvarez’s habeas petition, the Community argued that Alvarez did not exhaust because he failed to pursue “a motion to correct his sentences” or “a motion for commutation.”[2] The Community now admits that its response to Alvarez’s habeas petition “did not raise the failure to take a direct appeal as an argument in support of the nonexhaustion issue.”
After the Community filed its response to the habeas petition, Alvarez filed a motion for leave to conduct discovery. He sought permission to subpoena records and depose a witness regarding the appeals system in the Community courts.[3] Alvarez explained that this discovery was necessary “to address the defense of non-exhaustion raised in the Community’s Response.” See Johnson v. Gila River Indian *1028 Cmty., 174 F.3d 1032, 1036 (9th Cir. 1999) (noting that the lack of a functioning appellate court would render a direct appeal futile, negating any non-exhaustion defense). In its response to this motion, the Community noted that Alvarez’s request for information “relating to the processing of appeals” was “premised on a misunderstanding of Respondent’s affirmative defense that Petitioner has failed to exhaust his tribal court remedies.” The Community again explained that Alvarez’s available remedies were “(1) a motion for commutation of his sentence(s) or to correct his sentences(s) [sic], or (2) filing a petition for writ of habeas corpus in the Community Court.” Alvarez then withdrew his request for discovery due to the Community’s “clear indication that [it] is not arguing that Mr. Alvarez failed to exhaust his claims by raising them in an appeal to the Community court of appeals.” At no point did the Community ever seek to correct Alvarez’s interpretation of its response. We therefore conclude that the Community’s response to the discovery request was a deliberate waiver of any non-exhaustion defense stemming from Alvarez’s failure to file a direct appeal.
Our conclusion that the Community waived this defense is buttressed by the fact that the Community “deliberately steered” us away from the issue of the direct appeal. Wood, 132 S.Ct. at 1835. When asked to address exhaustion at argument before us,[4] the Community’s lawyer first insisted that the district court clearly erred by finding that it would have been futile for Alvarez to seek a commutation of his sentence or tribal habeas. When asked to expand on his argument, the lawyer again emphasized that “Alvarez never attempted to use any of the mechanisms that were specified in the record below.” According to the lawyer, these remedies “included commutation” and “a habeas proceeding.” When we asked about the possibility of a direct appeal, the Community’s lawyer referred us yet again to “the mechanisms that were identified in the motion to dismiss.” Those mechanisms didn’t include a direct appeal. The lawyer’s dogged insistence that we focus on commutation and tribal habeas “deliberately steered” us away from any discussion of the direct appeal. Id. That steering amounts to intentional waiver, which in turn precludes us from raising non-exhaustion sua sponte. See id.
II. Merits
Under ICRA, “[n]o Indian tribe in exercising powers of self-government shall ... deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury.” 25 U.S.C. § 1302(a)(10) (emphasis added). The parties debate at length whether the jury-trial right accorded by ICRA parallels the jury-trial right accorded by the Sixth Amendment. If the rights are “the same,” then we would employ federal constitutional standards when determining whether or not the Community violated Alvarez’s rights under ICRA. Randall v. Yakima Nation Tribal Court, 841 F.2d 897, 900 (9th Cir. 1988); see also Howlett v. Salish & Kootenai Tribes of the Flathead Reservation, Mont., 529 F.2d 233, 238 (9th Cir. 1976). But “[w]here the tribal court procedures under scrutiny differ significantly from those commonly employed ... courts weigh the individual right to fair treatment against the magnitude of the tribal interest ... to determine whether the procedures pass muster under” ICRA. Randall, 841 *1029 F.2d at 900 (internal citation and quotation marks omitted).[5] This balancing test reflects a “compromise intended to guarantee that tribal governments respect civil rights while minimizing federal interference with tribal culture and tradition.” Robert J. McCarthy, Civil Rights in Tribal Courts: The Indian Bill of Rights at Thirty Years, 34 Idaho L. Rev. 465, 467 (1998).
We need not resolve whether the jury-trial rights accorded by ICRA and the Sixth Amendment are equivalent. Assuming that Randall’s less rigorous balancing test applies, we conclude that Alvarez’s interests in understanding the full contours of his rights outweigh any interests the Community might have here. Indeed, the Community’s handling of Alvarez’s case falls short of the “fair treatment” required by ICRA. Randall, 841 F.2d at 900.
Alvarez’s right to “fair treatment” includes the right to know that he would forfeit his right to a jury unless he affirmatively requested one. The Community concedes that Alvarez “was not advised that he had to ask for” a jury. The Community doesn’t argue that its Defendant’s Rights form apprised Alvarez of the need for such a request. The right as articulated on the form (“the right to a jury trial”) is very different from the right Alvarez actually had under ICRA (“the right, upon request, to a trial by jury”). The Community doesn’t explain how a defendant would have known that he was obligated to make a request in order to preserve his right to a jury trial. Moreover, the first line on the form notes that criminal defendants have “the right to a speedy trial and a public trial.” Tribal defendants are accorded those rights without having to take affirmative steps to invoke them. To make the same unqualified statement as to a right that must be affirmatively invoked is misleading.
So far as we can tell, the Community’s theory is that Alvarez was expected to understand more about his rights than was printed on the form. This was an unreasonable expectation as to Alvarez, and, we expect, many others like him who are charged in tribal courts. At the time of his arraignment, Alvarez was barely out of his teens. He had a seventh-grade education, and he was not represented by counsel. He admitted to the judge that he didn’t “really know about court that much.” The judge himself noted that Alvarez was “having a hard time understanding the procedures.” Despite Alvarez’s profound limitations, the Community made no effort to ensure that Alvarez knew he would receive a jury trial only if he requested one.
We are generally reluctant to trench upon tribal sovereignty. See Smith v. Confederated Tribes of the Warm Springs Reservation of Or., 783 F.2d 1409, 1412 (9th Cir. 1986). But we think it clear that Alvarez’s interests here outweigh those of the Community. It hardly undermines tribal sovereignty to require that the Community inform defendants of the nature of their rights, including what must be done to invoke them. The fact that such a requirement presents minimal intrusion into a tribe’s sovereignty may explain why “all tribal courts presented with the question have concluded that there must be a knowing and voluntary waiver of ICRA’s condi *1030 tional jury right.” Mark D. Rosen, Multiple Authoritative Interpreters of Quasi-Constitutional Federal Law: Of Tribal Courts and the Indian Civil Rights Act, 69 Fordham L. Rev. 479, 555 (2000).[6] The Community has never attempted to explain what legitimate interest it has in using a boilerplate form that gives defendants a misleading picture of their rights.[7]
We hold that the Community denied Alvarez his right under ICRA to be tried by a jury. Because denial of the right to a jury trial is a structural error, it requires automatic reversal. See Sullivan v. Louisiana, 508 U.S. 275, 281-82, 113 5.Ct 2078, 124 L.Ed.2d 182 (1993). We therefore need not reach Alvarez’s alternative argument that the Community violated his confrontation right.
* ⅜ *
The judgment below is REVERSED. This case is REMANDED to the district court with instructions to grant the petition for a writ of habeas corpus.

. By whom, the record does not say.

. There is no doubt that Alvarez failed to exhaust these remedies. However, we agree with the district court that any attempt to invoke them would have been futile. A motion for commutation would have been denied due to Alvarez’s disciplinary infractions while incarcerated. And the Community failed to show that its criminal Code allowed for either habeas relief or the correction of a sentence, two remedies it faulted Alvarez for failing to pursue.

. To the extent that we refer here to information gleaned from sealed documents, we pro tanto lift the seal on that information.

. Alvarez’s unopposed motions to take judicial notice and to file an amended supplemental brief are GRANTED.

. The Randall test developed in the context of challenges premised on Section 202(8) of ICRA, which provides that a tribe may not "deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law." 25 U.S.C. § 1302(a)(8). We have never before had occasion to apply the Randall test to Section 202(10) of ICRA, which accords the jury-trial right. See id. § 1302(a)(10). But the language and principle of Randall sweep beyond Section 202(8).

. See, e.g., McGrady v. Three Affiliated Tribes, 31 Indian L. Rep. 6058, 6059 (N. Plains Intertribal Ct. App. 2004) ("[W]e expressly hold that the Tribe’s failure to inform the appellant [that he must request a jury trial at the time of arraignment] constitutes a violation of his right to a trial by jury as guaranteed under [ICRA].”); Confederated Salish & Kootenai Tribes v. Peone, 16 Indian L. Rep. 6136, 6137 (C.S. & K. Tribal Ct. 1989) ("This court must conclude that the failure of the accused to make a request for a jury trial constitutes a valid waiver only when that failure to request a jury trial is made knowingly and intentionally. ...”); Squaxin Island Tribe v. Johns, 15 Indian L. Rep. 6010, 6011 (Sq. I. Tribal Ct. 1987) ("[T]he court finds that the defendant subsequently waived his right to trial by jury by knowingly and voluntarily failing to appear. ...”); see also Laramie v. Colville Confederated Tribes, 22 Indian L. Rep. 6072, 6074 (Colv. Ct. App. 1995) ("[T]he fundamental right of a criminal defendant to a trial by jury cannot be diluted because of administrative difficulties.”).

. Citing four state-law cases, the Community suggests that a waiver of the statutory right to trial by jury need not be knowing. We question whether these cases are relevant to our analysis, as they do not interpret ICRA. But even if relevant, they are readily distinguishable. In three of the cases, the court specifically instructed the defendant that he had a right to a jury trial upon request. See State v. Vernon, 218 Neb. 539, 356 N.W.2d 887, 889 (1984); Jackson v. State, 644 N.E.2d 595, 596 (Ind. Ct. App. 1994); State v. Farmer, 548 S.W.2d 202, 205 (Mo. Ct. App. 1977). In the fourth case, the appellate court remarked that defendant’s “attorney clearly had knowledge of the time frame within which to make a jury trial demand.” State v. Gordon, 766 A.2d 75, 77 (Me. 2001). Moreover, the criminal defendant was represented by counsel in at least three of the four cases. Gordon, 766 A.2d at 76; Vernon, 356 N.W.2d at 889; Farmer, 548 S.W.2d at 205. The opinion in Jackson doesn’t mention whether the defendant had an attorney at trial. 644 N.E.2d 595.