O’SCANNLAIN, Circuit Judge,
concurring in part and dissenting in part:
I concur in the court’s determination that the Gila River Indian Community deliberately waived its non-exhaustion defense. I respectfully dissent, however, from the court’s conclusion that the Community denied Fortino Alvarez his “right, upon request, to a trial by jury” when Alvarez never requested a jury. Rather than analyze the scope of Alvarez’s jury-trial right under the Indian Civil Rights Act, the majority simply applies an unmoored balancing test without giving a single reason to do so.
I
As the majority recounts, in 2003 Forti-no Alvarez struck his girlfriend with a flashlight, threatened her with a knife, hit her brother with the flashlight, and threatened to kill the whole family. The Community charged him with various crimes. Prior to a group arraignment, Alvarez received a copy of the Community’s criminal complaint with a “Defendant’s Rights” form attached. The Defendant’s Rights form included the statement: “You have the right to a jury trial.” The Community did not specifically notify Alvarez that he needed to request a jury trial. The rights were also read at the beginning of the group arraignment. At the arraignment, the court asked Alvarez whether he had any questions about those rights. He responded that he did not.
Later that year, Alvarez was convicted of most charges in a tribal-court bench trial in which he represented himself. At no point before or during the trial did Alvarez request a jury or even inquire about one. In due course, Alvarez filed a federal habeas corpus petition under 25 U.S.C. § 1303 challenging various convictions and sentences on the basis of nine claims. The district court, adopting the recommendation of a magistrate judge, dismissed all claims. On appeal, Alvarez challenges only the dismissal of two claims: (1) his claim that he was denied his right to be confronted with the witnesses against him,[1] and (2) his claim that he was denied his right, upon request, to a jury trial.
II
A
“As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as *1032 limitations on federal or state authority.” United States v. Bryant, — U.S. —, 136 S.Ct. 1954, 1962, 195 L.Ed.2d 317 (2016) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 56, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)). “The Bill of Rights ..., therefore, does not apply in tribal-court proceedings.” Id. However, “persons subject to tribal authority can invoke other sources of individual rights. The two most prominent sources of these rights are tribal bills of rights ... and federal statutes such as” the Indian Civil Rights Act of 1968 (ICRA), Pub. L. No. 90-824, § 202, 82 Stat. 73, 77-78 (codified as amended at 25 U.S.C. § 1302(a)). F. Cohen, Cohen’s Handbook of Federal Indian Law § 14.Q3DL], at 944 (2012 ed.) [hereinafter Cohen’s].
ICRA, “rather than providing in wholesale fashion for the extension of constitutional requirements to tribal governments, as had been initially proposed, selectively incorporated and in some instances modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments.” Martinez, 436 U.S. at 62, 98 S.Ct. 1670. Thus, in ICRA, “Congress accorded a range of procedural safeguards to tribal-court defendants ‘similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.’ ” Bryant, 136 S.Ct. at 1962 (quoting Martinez, 436 U.S. at 57, 98 S.Ct. 1670).
B
“In addition to other enumerated protections, ICRA guarantees ‘due process of law.’” Id. (quoting ICRA § 202(8)). The majority concludes that the Community’s apparent failure to notify Alvarez of the requirement to request a jury (the “demand requirement”) was unfair, which sounds perhaps like a due process violation. However, Alvarez has not argued, on appeal or in the district court, that the failure to notify him of the demand requirement violated his right to due process. He argued below that numerous other aspects of his convictions violated his right to due process, but not the tribe’s failure to provide notice of the requirement to request a jury.
Fear not. The majority has devised a clever way to vindicate Alvarez’s due process rights: ignore the text of ICRA and instead import a due-process balancing test. Maj. Op. at 1028-29 & n.5 (concluding that we should apply the test from Randall v. Yakima Nation Tribal Court, 841 F.2d 897, 900 (9th Cir. 1988)). To its credit, the majority acknowledges that the Randall test was “developed in the context of challenges premised on” ICRA’s due process right, § 202(8), and further recognizes that we have never applied the Randall test to a jury-trial claim under § 202(10). Maj. Op. at 1029 n.5.
What the majority does next, however, is both unexplained and troubling. The majority does not state why we should apply an atextual balancing test to a claim under § 202(10). Instead, it jumps straight to the conclusory determination that “the language and principle of Randall sweep beyond Section 202(8).” Maj. Op. at 1029 n.5. With respect, this is not how we should decide cases. We determine the relevant standard to apply in a given case based on reasons to do so, not the absence of reasons to refrain from adopting some standard at random (or at will).
Importantly, Alvarez did not argue that we should apply the Randall test.[2] As a result, he waived any such argument, and *1033 the majority should not expect the Community to explain why the Randall test should not apply.
Moreover, we should not apply a test designed to evaluate generalized due process claims under § 202(8) when another ICRA provision, § 202(10), specifically addresses the right to a jury trial. In general, where a specific provision constitutes an explicit textual source of protection against a particular sort of government behavior, that provision, and not more generalized notions of due process, “must be the guide for analyzing” claims that the government engaged in prohibited behavior. See County of Sacramento v. Lewis, 523 U.S. 833, 842, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998); United States v. Lanier, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997); Lopez-Valenzuela v. Arpaio, 770 F.3d 772, 805 (9th Cir. 2014) (en banc) (O’Scannlain, J., dissenting). We should apply this principle to analysis under ICRA because the procedural safeguards of ICRA largely mirror those of the federal constitution, both in content and the relative levels of generality of their protections.
Indeed, we have already applied this principle in construing ICRA. In Tom v. Sutton, we declined to apply the due process right in § 202(8) to find a right to appointment of counsel for indigent defendants because § 202(6) specifically addressed the right to counsel. 533 F.2d 1101,1105 (9th Cir. 1976).
Thus, there are at least two good reasons not to import Randall’s due-process test to evaluate jury-trial claims. Yet the majority adopts such test for its analysis without any countervailing reason to do so.[3]
Ill
Instead of shrugging our shoulders and adopting a due-process test for no reason, we should construe ICRA’s jury-trial provision and determine whether the Community violated Alvarez’s right under such provision.
A
Alvarez argues that ICRA’s jury-trial right parallels the jury-trial right guaranteed by the Sixth Amendment. It clearly does not.
1
Congress modified the safeguards regarding imprisonment and the criminal jury trial in the ICRA. The Sixth Amendment provides:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the- crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.
As originally enacted, the ICRA provided: “No Indian tribe in exercising powers of self-government shall ...
*1034 (6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense; ...
(10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons.”
ICRA, Pub. L. No. 90-824, § 202, 82 Stat. 73, 77-78 (1968) (codified as amended at 25 U.S.C. §§ 1302(a)(6)-(8), (10) (2012)).
ICRA § 202(6) contained most of the same text as the Sixth Amendment, but it differed in key aspects. For instance, it did not provide for free counsel for indigent defendants, ICRA § 202(6) (counsel “at his own expense”), while the Sixth Amendment did so provide, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Also, § 202(6) did not provide a right to a jury trial.
ICRA § 202(10) provided a jury-trial right, but its text did not parallel the Sixth Amendment text at all. Indeed, the only commonality between the text of ICRA § 202(10) and the Sixth Amendment was that both contain the words “right to a,” “trial,” “by,” and “jury.” Subsection 202(10) expressly required a request to receive a jury, it did not require an impartial jury, and it did not require a jury “of the State and district wherein the crime shall have been committed.” Compare ICRA § 202(10) with U.S. Const, amend. VI.
2
Critically, unlike the Sixth Amendment, ICRA provides a right to have a jury trial only upon request.
In 1986, Congress permitted tribes to impose a sentence of up to one year in jail. Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986, Pub. L. No. 99-570, § 4217, 100 Stat. 3207-146 (codified as amended at 25 U.S.C. § 1302(a)(7)(B)). At that time, the Sixth Amendment required a jury trial as the default for any crime punishable by more than six months in jail. See Baldwin v. New York, 399 U.S. 66, 69, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970) (plurality). In federal court, a defendant would receive a jury trial for a non-petty offense unless (1) he waived a jury in writing, (2) the government consented, (3) the trial court sanctioned the waiver, and (4) the waiver was made expressly and intelligently. See Singer v. United States, 380 U.S. 24, 34, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965). The States had “adopted a variety of procedures relating to the waiver of jury trials in state criminal cases.” Id. at 36-37, 85 S.Ct. 783. Without a waiver, a jury trial was the default for “serious crimes.” Duncan v. Louisiana, 391 U.S. 145, 154, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968) (“The laws of every State guarantee a right to jury trial in serious criminal cases.... ”).[4]
*1035 Thus, contrary to Alvarez’s argument, ICRA’s jury-trial right differs substantially from the Sixth Amendment’s jury-trial right. However, this conclusion merely raises the question: if the rights are different, then what right did Congress provide in ICRA?
B
1
The plain meaning of § 202(10) at the time of its enactment suggests that it did not obligate tribes to provide notice of the demand requirement. Subsection (10) provides: “No Indian tribe ... shall ... deny to any person ... the right, upon request, to a trial by jury.” Thus, at least one prohibition is clear in the statutory text: a tribe cannot refuse to grant a defendant’s request for a jury trial. The tribe did notify Alvarez of his right to a jury trial, and there is no dispute that Alvarez did not request a jury.
Instead, the parties’ dispute centers on whether § 202(10) obligated the tribe also to notify Alvarez of the requirement to request a jury. Do tribes deny the “right, upon request, to a trial by jury” by failing to notify defendants of the need to request a jury? Obviously, the plain text of § 202(10) does not explicitly state that a tribe must provide a defendant with notice of such requirement. The lack of any textual requirement that tribes notify defendants of the need to request a jury strongly suggests that Congress did not impose such a requirement.
2
Context reinforces that the right to receive a jury trial does not include a right to be notified of the need to request a jury trial.
In 1968, there existed both tribal courts established by tribes and Courts of Indian Offenses, which “were created by the Federal Bureau of Indian Affairs to administer criminal justice for those tribes lacking their own criminal courts.” Santa Clara Pueblo, 436 U.S. at 64 n.12, 98 S.Ct. 1670; see also Cohen’s § 4.04[3][c], at 263-64. Congress applied § 202, including the jury-trial right, to both types of courts. ICRA §§ 201-02. In a neighboring provision, § 301 of that statute, Congress directed the Secretary of the Interior also to establish a model code to govern the Courts of Indian Offenses:
Such code shall include provisions which will (1) assure that any individual being tried for an offense by a court of Indian offenses shall have the same rights, privileges, and immunities under the United States Constitution as would be guaranteed any citizen of the United States being tried in a Federal court for any similar offense, (2) assure that any individual being tried for an offense by a court of Indian offenses will be advised and made aware of his rights under the United States Constitution, and under any tribal constitution applicable to such individual....
Pub. L. No. 90-284, § 301, 82 Stat. 73, 78 (codified at 25 U.S.C. § 1311) (emphasis added). Thus, in federally established Courts of Indian Offenses, a model code would assure that defendants there both *1036 have rights—the full slate of rights provided by our Constitution—and that they have notice of these rights. The fact that Congress provided for both in separately enumerated provisions of § 301 strongly suggests that Congress viewed rights as distinct from notice of such rights. While a model code for Courts of Indian Offenses would provide both, Congress did not impose a model code on tribal courts established by tribes, such as the court in which Alvarez was convicted. Instead, for such courts Congress only imposed the rights contained in § 202, without any notice requirement.
Consequently, I would conclude that Congress did not impose on tribes any obligation to notify defendants of the need to request a jury. Section 202(10) only required tribes to refrain from denying the right to a jury trial, but did not obligate tribes to notify defendants of the need to request a jury.
3
Substantive canons reinforce my conclusion that we should not construe § 202(10) to impose on tribes a duty to notify defendants that they must request a jury.
“Federal courts must avoid undue or intrusive interference in reviewing Tribal Court procedures.” Smith v. Confederated Tribes of Warm Springs, 783 F.2d 1409, 1412 (9th Cir. 1986). In the specific context of ICRA, the Supreme Court has emphasized that “considerations of ‘Indian sovereignty are a backdrop against which the applicable federal statute must be read.’ ” Santa Clara Pueblo, 436 U.S. at 60, 98 S.Ct. 1670 (quoting McClanahan v. Ariz. State Tax Comm’n, 411 U.S. 164, 172, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973) (alterations omitted)). Most importantly, the Court has admonished, “Although Congress clearly has power to authorize civil actions against tribal officers, and has done so with respect to habeas corpus relief in [28 U.S.C. § 1303], a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent.” Id. Absent any clear indications that § 202(10) requires the tribe to notify Alvarez of the demand requirement, we should “tread lightly” and conclude that Alvarez has failed to show that the tribe violated his rights under § 202(10).[5]
*1037 c
Based on the plain meaning of the statutory text, the statute’s context, and important considerations of tribal sovereignty, I would conclude that ICRA § 202(10) prohibits a tribe from refusing a defendant’s request for a jury trial, but does not impose an affirmative obligation on tribes to notify defendants that they must request a jury. Because Alvarez did not request a jury, the Community did not violate his rights under § 202(10).
I respectfully dissent.

. Like the majority, I do not address Alvarez’s confrontation rights.

. Instead, he argued that the ICRA juiy-trial right parallels the Sixth Amendment jury-trial right, so we should employ "federal constitutional standards” to evaluate his jury-trial claim.

. Further, I am not persuaded that it was unfair to require Alvarez to do something to invoke his rights. Alvarez was told he had a right to a jury trial. Alvarez failed to object, ask a question, or do anything when it was clear that the trial was proceeding without a jury. And after the trial was over, he failed to appeal. At a certain point, a defendant cannot sit on his rights and then claim unfairness when the trial does not turn out the way he wanted.

. The Sixth Amendment does not require a jury trial for "petty offenses,” for which the penalty does not exceed six months' imprisonment or a $500 fine, or both. See 18 U.S.C. § 1(3) (1964) ("Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense.”); Cheff v. Schnackenberg, 384 U.S. 379 (1966) (A "petty offense ... does not require a jury trial.”). Indeed, at the time of ICRA’s enactment in April 1968, three states did not require jury trials for longer periods of imprisonment: Louisiana only granted a jury trial in cases in which capital punishment or hard labor could be imposed; New Jersey’s disorderly conduct offense carried a one-year maximum sentence but no jury trial; and New York State did not provide juries in New York City for crimes with a one-year maximum *1035 sentence. Duncan, 391 U.S. at 146, 161 & n.33, 88 S.Ct. 1444. Shortly after ICRA's enactment, the Supreme Court confirmed that states need not provide a jury trial for "[c]rimes carrying possible penalties up to six months ... if they otherwise qualify as petty offenses.” Id. at 159, 88 S.Ct. 1444. Thus, ICRA § 202(10) provided a greater right than those available in federal court or in state court for offenses for which the penalty did not exceed six months.

. We should not give much, if any weight, to the tribal decisions discussed by the parties. First, we should not base our opinion on decisions issued by unrelated tribes. Alvarez makes no argument that the Gila River Indian Community’s tribal courts would handle this issue in the same manner as other courts that have addressed the issue. The Community could interpret § 202(10) differently depending on the tribe’s own needs, customs, and resources. One commentator has noted:
Indian tribes are not all alike. Tribes range in size from tremendous to tiny. Some gaming tribes have per capita incomes that rival the richest towns in the United States while other tribes are some of the poorest communities in the country. Some tribes have adopted tribal court systems that largely mimic those present in the states surrounding them, while others have courts with little or no resemblance to Anglo-American justice systems.
Max Minzner, Treating Tribes Differently: Civil Jurisdiction Inside and Outside Indian Country, 6 Nev. L.J. 89, 89 (Fall 2005) (footnotes omitted). Thus, the panel should avoid imposing the decisions of unrelated tribes on the Community. To the extent that we give any weight to the tribal opinions, I note that in Confederated Salish & Kootenai Tribes v. Peone, 16 Indian L. Rep. 6136 (C.S. & K. Tr. Ct. 1989), the court stated: "In the event of a pro se defense, it is the accused's responsibility to be aware of his own rights ... and failure to act in a timely manner on his own behalf is a burden the accused must bear alone. Even when the accused intends to obtain legal counsel the need for timely advice generally is the responsibility of the defendant.” Id. at 6137.
*1037 Like the majority, Maj. Op. at 1030 n.7, I question whether state-court decisions are relevant to our analysis. To the extent that we consider them, I note that several state-court decisions support the tribe's position. See State v. McClinton, 418 S.W.2d 55, 60-61 (Mo. 1967) (discussing State v. Larger, 45 Mo. 510, 511 (1870)); State v. Mangelsen, 207 Neb. 213, 297 N.W.2d 765, 767-68 (1980).