STATE of Missouri, Plaintiff-Respondent,

v.

Jackie Lyman FARMER, Defendant-Appellant.

No. 10308.

Missouri Court of Appeals, Springfield District.

Feb. 28, 1977.

Lawrence E. Kinnamon, Jr., G. Spencer Miller, Morris, Foust, Beckett & Ponick, Kansas City, for defendant-appellant.

No appearance, for plaintiff-respondent.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

HOGAN, Judge.

The offense is operating a motor vehicle while intoxicated (second offense); the punishment assessed upon a bench trial is confinement for six months. Defendant appeals.

About 8:30 p. m. on December 20, 1973, defendant was driving east on Highway 32 in Cedar County; he attracted the attention of westbound Trooper J. D. Starbuck by "weaving off on the shoulder and across the center line." Upon trial, Trooper Starbuck testified as follows without objection:

"Q. What did you do after you observed him there  .  .  .?

A. Turned around and followed him back east until he turned off north on a dirt road.

Q. Would you describe what you observed, if anything, at that time?

A. About his driving, of course he continued on east on [Highway] 32 weaving off on the shoulder and across the center line. He made a left turn onto a dirt road and went completely over on the left side of this dirt road. We stopped him at that time and arrested him for intoxicated driving.

\* \* \* \* \* \*

Q. Would you describe [defendant's] personal appearance as you recall it?

A. Yes. He smelled strongly of an alcoholic beverage. He was unsteady on his feet, bloodshot eyes.

\* \* \* \* \* \*

Q. Do you recall if he indicated whether or not he had been drinking?

A. I don't recall whether we asked him, it was obvious.

Q. What did you do after you stopped him? . . .

A. We arrested him for intoxicated driving. . . . We drove him into the Cedar County Sheriff's Office."

The interrogation continued, and eventually the prosecutor put this question:

"Q. Officer Starbuck . . . based upon your observation of the defendant on the evening we are talking about, do you have an opinion as to whether or not he was intoxicated?

A. Yes, I do."

Defendant then objected that Trooper Starbuck was not qualified to express an opinion, and the questioning proceeded:

"THE COURT: Mr. Starbuck, you have been on the Highway Patrol how many years?

A. Twelve years.

THE COURT: In that period of time you had, I take it, frequent opportunities to observe people who were drinking?

A. Yes, I have.

THE COURT: From your observation of this defendant you say he was intoxicated?

A. Yes, I figured he was intoxicated.

THE COURT: I will overrule the objection.

Q. . . . [W]ith regard to intoxication, what is your opinion?

A. My opinion is that he was intoxicated.

[Hereupon, *defendant's* counsel interjected:]

Q. Officer, your opinion that you have just expressed to the Court here that [defendant] was intoxicated, you are basing that upon your own observations and not upon the result of the breathalyzer test?

A. Yes, this was my opinion before I gave him the breathalyzer.

Q. You would have considered him to be intoxicated regardless of whether or not you gave him the breathalyzer?

A. Yes, I would."

The defendant testified in his own behalf. Much of his testimony was devoted to the activities in which he had taken part during the earlier part of the evening and to the circumstances in which his "breathalyzer" test was taken. He did testify that Highway 32 was "hazardous and slick" on December 20, 1973, and that prior to his arrest he had taken some prescribed medication containing codeine.

In this court counsel has briefed six points of error, four of which, according to counsel, assume federal constitutional dimension. Some preliminary observations are appropriate. This is a bench-tried case; no motion for new trial was necessary to secure appellate review of the conviction, and our principal concern is whether there was substantial evidence to support the finding of guilt. *State v. Hatfield,* 465 S.W.2d 468, 470[5] (Mo.1971); *State v. Bruns,* 522 S.W.2d 54, 55[1] (Mo.App.1975).

A further basic principle to be borne in mind is that timely objection is required to preserve questions for review even when they have some constitutional basis. *State v. Tyler,* 454 S.W.2d 564, 567[2] (Mo.1970); *State v. Wintjen,* 522 S.W.2d 628, 630[5] (Mo.App.1975).

■ During trial and upon this appeal counsel has expended considerable effort attempting to demonstrate that the result of the breathalyzer test was, for various reasons, unreliable. To begin with, it appears that the trial court took no account of the breathalyzer test; when its tentative findings were announced at the close of the hearing, it was so stated. Further, and with deference, counsel considerably overestimates the importance and significance of chemical breath tests in cases of this kind. Chemical blood, breath, saliva or urine tests have been routinely administered and offered in evidence in drunken driving cases since the "implied consent" law was enacted in 1965, Laws of Mo.1965, p. 670, but proof of intoxication by means of a chemical test is in no sense requisite to a conviction of driving while intoxicated. The elements of the offense charged are simply 1) that defendant operated a motor vehicle, and 2) that he was intoxicated while so doing. *State v. Grove,* 204 S.W.2d 757, 759[5] (Mo.1947); *State v. Kissinger,* 343 Mo. 781, 783–784, 123 S.W.2d 81, 82[1] (1938); *State v. Dodson,* 496 S.W.2d 272, 273[1] (Mo.App.1973). Section 564.442, RSMo Supp. 1975, attaches certain evidentiary weight to the results of chemical tests for intoxication, properly administered, but the statute which defines and denounces the offense of driving while intoxicated, § 564.440, RSMo 1969, does not require the State to prove gross intoxication; the State need only prove a degree of intoxication which impairs the ability of a person to operate an automobile. *State v. Cox,* 478 S.W.2d 339, 341–342[5, 6] (Mo.1972); *State v. Campbell,* 292 S.W.2d 297, 299 (Mo.1956). Alcoholic intoxication is a fact which may be proved by any lay witness who has had a reasonable opportunity to observe the defendant. *State v. Powell,* 306 S.W.2d 531, 532–533 (Mo.1957); *State v. Revard,* 341 Mo. 170,

175, 106 S.W.2d 906, 909[7] (1937); *State v. Scaturro,* 509 S.W.2d 491, 493 (Mo.App. 1974). The evidence given by Trooper Starbuck was manifestly sufficient to sustain the judgment of conviction regardless of the accuracy of the breathalyzer test. See *State v. Griffin,* 320 Mo. 288, 294, 6 S.W.2d 866, 867–868 (1928); *State v. Bruns,* supra, 522 S.W.2d at 55–56; *Kansas City v. Douglas,* 483 S.W.2d 760, 761–762 (Mo.App.1972).

■ Several additional assignments of error have been made. One flatly asserted claim of prejudicial error is that the trial court erred in denying the defendant a jury trial. The record shows only that the prosecution was instituted on December 26, 1973, by the filing of a Uniform Traffic Ticket; on January 11, 1974, a change of venue was taken from the Cedar County Magistrate Court to the Circuit Court of Cedar County; defendant appeared in circuit court on January 27, 1975, waived reading of the information and entered a plea of not guilty. May 22, 1975, was set as the trial date, and on that day an information was filed in the circuit court. Defendant failed to appear on the date set for trial and a capias warrant issued for his arrest. Defendant was taken in custody and released on bond, conditioned to appear May 30, 1975. On May 28, 1975, defendant's counsel asked leave to withdraw. A hearing was had on the motion and counsel was allowed to withdraw. The cause was reset for July 23, 1975, and defendant was told to obtain the services of another attorney. Defendant appeared on July 23, 1975, with present counsel, who requested a continuance, stating that his firm had only had the case four or five days. The trial court reviewed its record, noting that defendant had been contacted by the clerk a week before the trial and had been asked if he wanted a jury trial. The trial court stated it was his information defendant had said he did not desire a jury trial. The record indicates no request that the trial court summon a jury nor any objection to proceeding to trial without a jury. The matter of a jury trial was not mentioned until September 8, 1975, and then only by untimely attempted

amendment to the motion for new trial 47 days after the trial court's finding of guilt.

Such are the record facts. The substance of defendant's point here is that the record shows no voluntary, intelligent waiver of a jury trial, as required by Rule 26.01, V.A. M.R. In support of this contention defendant cites *State v. McClinton,* 418 S.W.2d 55 (Mo. banc 1967). What that case holds is that the failure of the record to show waiver of a jury in a misdemeanor case creates no presumption of irregularity, despite the provisions of Rule 26.01(b). All we have here is a record devoid of any request for a jury or objection to proceeding to trial without a jury. In fact, since *McClinton,* Rule 26.01(b) has been amended so as to require only that defendant's waiver of a jury trial be entered of record in *felony* cases. Defendant's point is without merit.

■ Defendant makes two further points. Neither requires extended discussion. What he has to say about the trial court's denial of a motion for continuance made orally on the day of trial is governed by what was held in *State v. Crider,* 451 S.W.2d 825, 828 (Mo.1970). The accused's right to private counsel is limited by the State's right to proceed to trial after the accused has been afforded a fair opportunity to engage his own counsel and adequate time to prepare his defense, and does not include the right to defeat or impede the orderly processes of the administration of justice. Defendant's complaint that he was given no *Miranda* warning preceding his breathalyzer test is governed by our Supreme Court's holding in *Spradling v. Deimeke,* 528 S.W.2d 759, 764[7] (Mo.1975).

We find no error; the judgment and sentence are affirmed.

All concur.