**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FORTINO ALVAREZ,
*Petitioner-Appellant*,

v.

RON LOPEZ,* Chief Administrator for
the Gila River Indian Department of
Rehabilitation and Supervision,
*Respondent-Appellee*.

No. 12-15788

D.C. No.
2:08-cv-02226-
DGC

ORDER AND
OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted April 15, 2013
San Francisco, California

Filed August 30, 2016

Before: Alex Kozinski, Diarmuid F. O'Scannlain,
and N. Randy Smith, Circuit Judges.

---

*\* Ron Lopez succeeded Randy Tracy as Chief Administrator. We substitute him for Tracy pursuant to Federal Rule of Appellate Procedure 43(c)(2).

Opinion by Judge Kozinski;
Concurrence by Judge Kozinski;
Partial Concurrence and Partial Dissent by Judge
O'Scannlain

## SUMMARY[**]

### Habeas Corpus

The panel granted a petition for panel rehearing; withdrew an opinion and dissent filed December 8, 2014; filed a new opinion and dissent; and denied a petition for rehearing en banc as moot in a case in which the panel, in the new opinion, reversed the district court's denial of a federal habeas petition brought by Fortino Alvarez, an enrolled member of the Gila River Indian Community, who sought relief from his tribal-court conviction.

Under the Indian Civil Rights Act (ICRA), Indian tribes may not deny criminal defendants facing imprisonment "the right, upon request, to a trial by jury." Alvarez sought habeas relief on the theory that the Community deprived him of that right by failing to inform him that he would only receive a jury upon request.

After reviewing new information presented in Alvarez's petition for panel rehearing and the parties' supplemental briefs, the panel concluded that the Community deliberately waived any non-exhaustion defense stemming from Alvarez's

   [**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

failure to file a direct appeal. That waiver precluded the panel from raising non-exhaustion sua sponte.

The panel did not need to resolve whether the jury-trial rights accorded by ICRA and the Sixth Amendment are equivalent. Assuming that the balancing test in *Randall v. Yakima Nation Tribal Court*, 841 F.2d 897 (9th Cir. 1988), applies, the panel concluded that Alvarez's interests in understanding the full contours of his rights outweigh any interests the Community might have here. The panel wrote that the Community's handling of Alvarez's case falls short of the "fair treatment" required by ICRA, which includes the right to know that he would forfeit his right to a jury unless he affirmatively requested one.

Because the denial of the right to a jury trial is a structural error, it requires automatic reversal, and the panel remanded to the district court with instructions to grant the petition for a writ of habeas corpus.

In a concurring opinion, Judge Kozinski wrote that this appeal gives no occasion to consider a rat's nest of problems with the Community's justice system. He wrote that perhaps the Community and others like it will take this opportunity to reconsider the dubious procedures they employ in their criminal courts.

Judge O'Scannlain concurred in the court's determination that the Community deliberately waived its non-exhaustion defense. He dissented from the court's conclusion that the Community denied Alvarez his "right, *upon request*, to a trial by jury" when Alvarez never requested a jury. He wrote that rather than analyze the scope of Alvarez's jury-trial right

under ICRA, the majority applies an unmoored balancing test
without giving a reason to do so.

## COUNSEL

Daniel L. Kaplan (argued) and Keith J. Hilzendeger,
Assistant Federal Public Defenders; Jon M. Sands, Federal
Public Defender; Office of the Federal Public Defender,
Phoenix, Arizona; for Petitioner-Appellant.

Thomas L. Murphy (argued), Deputy General Counsel; Linus
Everling, General Counsel; Gila River Indian Community
Office of the General Counsel, Sacaton, Arizona; for
Respondent-Appellee.

Barbara Creel, Professor of Law and Director of Southwest
Indian Law Clinic, University of Mexico School of Law,
Albuquerque, New Mexico; Tova Indritz, Co-Chair, Native
American Justice Committee, National Association of
Criminal Defense Lawyers, Albuquerque, New Mexico; for
Amicus Curiae National Association of Criminal Defense
Lawyers and Barbara Creel.

**ORDER**

The petition for panel rehearing is **GRANTED**. The opinion and dissent filed on December 8, 2014 and published at 773 F.3d 1011 are withdrawn. They are replaced by the new opinion and dissent filed concurrently with this order. The pending petition for rehearing en banc is **DENIED** as moot. The parties may file new petitions for panel rehearing or rehearing en banc within 14 days.

---

**OPINION**

KOZINSKI, Circuit Judge:

We consider whether an Indian tribe violated a criminal defendant's rights by failing to inform him that he could receive a jury trial only by requesting one.

**FACTS**

Fortino Alvarez is an enrolled member of the Gila River Indian Community (the "Community"). In April of 2003, Alvarez (then 20) showed up drunk at the home of his girlfriend (then 15). Following a brief argument, Alvarez struck his girlfriend with a flashlight. When she attempted to retreat, Alvarez pulled a knife. The girlfriend's brother then stepped outside to confront Alvarez. Alvarez clubbed him too. Alvarez then took his leave, but not before informing his victims that he would soon return to kill their entire family.

Alvarez was picked up by the Community police and charged with assault, domestic violence, criminal threats, and

misconduct involving a weapon. According to the Community, Alvarez received a "Defendant's Rights" form along with the criminal complaint. The Defendant's Rights form said: "You have the right to a jury trial." The form didn't explain what Alvarez needed to do in order to invoke that right.

At a group arraignment, the judge stated that Alvarez had been informed of his rights.[1] The judge then asked Alvarez if he had any questions about those rights. He said that he didn't. At a bench trial four months later, Alvarez represented himself. He presented no evidence, no witnesses, no case, and no closing argument. When the judge asked Alvarez whether he wished to cross-examine the government's key witness, Alvarez conceded that everything the witness had said was true. Alvarez was convicted on all counts except making criminal threats. He was sentenced to five years in prison.

Under the Indian Civil Rights Act (ICRA), tribes may not deny criminal defendants facing imprisonment "the right, upon request, to a trial by jury." 25 U.S.C. § 1302(a)(10). Alvarez sought federal habeas relief on the theory that the Community had deprived him of that right by failing to inform him that he would only receive a jury upon request. *See id.* § 1303. The district court denied relief after finding that Alvarez validly waived his right to a jury trial by failing to request one.

---

[1] By whom, the record does not say.

# DISCUSSION

## I. Exhaustion

We may not exercise jurisdiction over a habeas petition presenting ICRA claims unless the petitioner has first exhausted his tribal remedies. *See Grand Canyon Skywalk Dev., LLC* v. *'SA' NYU WA Inc.*, 715 F.3d 1196, 1200 (9th Cir. 2013). The exhaustion doctrine is rooted in our respect for tribal sovereignty: We are loath to second guess a tribe's handling of a criminal case unless and until the tribe has had a fair opportunity to review the matter in its own appellate courts. In order to protect tribal sovereignty, we may raise the issue of non-exhaustion *sua sponte* when the tribe fails to press that defense due to an "inadvertent error." *Day* v. *McDonough*, 547 U.S. 198, 211 (2006). But we may not override a tribe's "deliberate waiver" of its non-exhaustion defense. *Wood* v. *Milyard*, 132 S. Ct. 1826, 1834 (2012); *see Day*, 547 U.S. at 202. We have no discretion to raise non-exhaustion on our own initiative when a tribe "strategically withh[olds]" this defense, "cho[oses] to relinquish it," makes a "deliberate decision to proceed straightaway to the merits," or "deliberately steer[s] the [court] away from" the issue. *Wood*, 132 S. Ct. at 1833–35.

In order to satisfy the exhaustion requirement, a criminal defendant must pursue a direct appeal or show that such an appeal would have been futile. *See Jeffredo* v. *Macarro*, 599 F.3d 913, 918 (9th Cir. 2010). Alvarez failed to pursue a direct appeal or show the appeal would have been futile. However, the Community's response to Alvarez's habeas petition didn't argue that this failure presented an exhaustion problem. In our previous opinion, we raised the non-exhaustion defense *sua sponte* after concluding that there was

"no indication in the record that the Community deliberately waived" it. *Alvarez* v. *Tracy*, 773 F.3d 1011, 1019 (9th Cir. 2014). After reviewing new information presented in Alvarez's petition for rehearing and the parties' supplemental briefs, we now conclude that there *is* evidence of deliberate waiver.

In its response to Alvarez's habeas petition, the Community argued that Alvarez did not exhaust because he failed to pursue "a motion to correct his sentences" or "a motion for commutation."[2] The Community now admits that its response to Alvarez's habeas petition "did not raise the failure to take a direct appeal as an argument in support of the nonexhaustion issue."

After the Community filed its response to the habeas petition, Alvarez filed a motion for leave to conduct discovery. He sought permission to subpoena records and depose a witness regarding the appeals system in the Community courts.[3] Alvarez explained that this discovery was necessary "to address the defense of non-exhaustion raised in the Community's Response." *See Johnson* v. *Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999) (noting that the lack of a functioning appellate court would

---

[2] There is no doubt that Alvarez failed to exhaust these remedies. However, we agree with the district court that any attempt to invoke them would have been futile. A motion for commutation would have been denied due to Alvarez's disciplinary infractions while incarcerated. And the Community failed to show that its criminal Code allowed for either habeas relief or the correction of a sentence, two remedies it faulted Alvarez for failing to pursue.

[3] To the extent that we refer here to information gleaned from sealed documents, we *pro tanto* lift the seal on that information.

render a direct appeal futile, negating any non-exhaustion defense). In its response to this motion, the Community noted that Alvarez's request for information "relating to the processing of appeals" was "premised on a misunderstanding of Respondent's affirmative defense that Petitioner has failed to exhaust his tribal court remedies." The Community again explained that Alvarez's available remedies were "(1) a motion for commutation of his sentence(s) or to correct his sentences(s) [sic], or (2) filing a petition for writ of habeas corpus in the Community Court." Alvarez then withdrew his request for discovery due to the Community's "clear indication that [it] is not arguing that Mr. Alvarez failed to exhaust his claims by raising them in an appeal to the Community court of appeals." At no point did the Community ever seek to correct Alvarez's interpretation of its response. We therefore conclude that the Community's response to the discovery request was a deliberate waiver of any non-exhaustion defense stemming from Alvarez's failure to file a direct appeal.

Our conclusion that the Community waived this defense is buttressed by the fact that the Community "deliberately steered" us away from the issue of the direct appeal. *Wood*, 132 S. Ct. at 1835. When asked to address exhaustion at argument before us,[4] the Community's lawyer first insisted that the district court clearly erred by finding that it would have been futile for Alvarez to seek a commutation of his sentence or tribal habeas. When asked to expand on his argument, the lawyer again emphasized that "Alvarez never attempted to use any of the mechanisms that were specified in the record below." According to the lawyer, these

---

[4] Alvarez's unopposed motions to take judicial notice and to file an amended supplemental brief are **GRANTED**.

remedies "included commutation" and "a habeas proceeding." When we asked about the possibility of a direct appeal, the Community's lawyer referred us yet again to "the mechanisms that were identified in the motion to dismiss." Those mechanisms didn't include a direct appeal. The lawyer's dogged insistence that we focus on commutation and tribal habeas "deliberately steered" us away from any discussion of the direct appeal. *Id.* That steering amounts to intentional waiver, which in turn precludes us from raising non-exhaustion sua sponte. *See id.*

## II. Merits

Under ICRA, "[n]o Indian tribe in exercising powers of self-government shall . . . deny to any person accused of an offense punishable by imprisonment the right, *upon request*, to a trial by jury." 25 U.S.C. §1302(a)(10) (emphasis added). The parties debate at length whether the jury-trial right accorded by ICRA parallels the jury-trial right accorded by the Sixth Amendment. If the rights are "the same," then we would employ federal constitutional standards when determining whether or not the Community violated Alvarez's rights under ICRA. *Randall* v. *Yakima Nation Tribal Court*, 841 F.2d 897, 900 (9th Cir. 1988); *see also Howlett* v. *Salish & Kootenai Tribes of the Flathead Reservation, Mont.*, 529 F.2d 233, 238 (9th Cir. 1976). But "[w]here the tribal court procedures under scrutiny differ significantly from those commonly employed . . . courts weigh the individual right to fair treatment against the magnitude of the tribal interest . . . to determine whether the procedures pass muster under" ICRA. *Randall*, 841 F.2d at

900 (internal citation and quotation marks omitted).[5]  This balancing test reflects a "compromise intended to guarantee that tribal governments respect civil rights while minimizing federal interference with tribal culture and tradition."  Robert J. McCarthy, *Civil Rights in Tribal Courts: The Indian Bill of Rights at Thirty Years*, 34 Idaho L. Rev. 465, 467 (1998).

We need not resolve whether the jury-trial rights accorded by ICRA and the Sixth Amendment are equivalent. Assuming that *Randall*'s less rigorous balancing test applies, we conclude that Alvarez's interests in understanding the full contours of his rights outweigh any interests the Community might have here.  Indeed, the Community's handling of Alvarez's case falls short of the "fair treatment" required by ICRA.  *Randall*, 841 F.2d at 900.

Alvarez's right to "fair treatment" includes the right to know that he would forfeit his right to a jury unless he affirmatively requested one.  The Community concedes that Alvarez "was not advised that he had to ask for" a jury.  The Community doesn't argue that its Defendant's Rights form apprised Alvarez of the need for such a request.  The right as articulated on the form ("the right to a jury trial") is very different from the right Alvarez actually had under ICRA ("the right, *upon request*, to a trial by jury").  The Community doesn't explain how a defendant would have known that he

---

[5] The *Randall* test developed in the context of challenges premised on Section 202(8) of ICRA, which provides that a tribe may not "deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law."  25 U.S.C. § 1302(a)(8).  We have never before had occasion to apply the *Randall* test to Section 202(10) of ICRA, which accords the jury-trial right. *See id.* § 1302(a)(10).  But the language and principle of *Randall* sweep beyond Section 202(8).

was obligated to make a request in order to preserve his right to a jury trial. Moreover, the first line on the form notes that criminal defendants have "the right to a speedy trial and a public trial." Tribal defendants are accorded those rights without having to take affirmative steps to invoke them. To make the same unqualified statement as to a right that must be affirmatively invoked is misleading.

So far as we can tell, the Community's theory is that Alvarez was expected to understand more about his rights than was printed on the form. This was an unreasonable expectation as to Alvarez, and, we expect, many others like him who are charged in tribal courts. At the time of his arraignment, Alvarez was barely out of his teens. He had a seventh-grade education, and he was not represented by counsel. He admitted to the judge that he didn't "really know about court that much." The judge himself noted that Alvarez was "having a hard time understanding the procedures." Despite Alvarez's profound limitations, the Community made no effort to ensure that Alvarez knew he would receive a jury trial only if he requested one.

We are generally reluctant to trench upon tribal sovereignty. *See Smith* v. *Confederated Tribes of the Warm Springs Reservation of Or.*, 783 F.2d 1409, 1412 (9th Cir. 1986). But we think it clear that Alvarez's interests here outweigh those of the Community. It hardly undermines tribal sovereignty to require that the Community inform defendants of the nature of their rights, including what must be done to invoke them. The fact that such a requirement presents minimal intrusion into a tribe's sovereignty may explain why "all tribal courts presented with the question have concluded that there must be a knowing and voluntary waiver of ICRA's conditional jury right." Mark D. Rosen,

*Multiple Authoritative Interpreters of Quasi-Constitutional Federal Law: Of Tribal Courts and the Indian Civil Rights Act*, 69 Fordham L. Rev. 479, 555 (2000).[6] The Community has never attempted to explain what legitimate interest it has in using a boilerplate form that gives defendants a misleading picture of their rights.[7]

---

[6] *See, e.g.*, *McGrady* v. *Three Affiliated Tribes*, 31 Indian L. Rep. 6058, 6059 (N. Plains Intertribal Ct. App. 2004) ("[W]e expressly hold that the Tribe's failure to inform the appellant [that he must request a jury trial at the time of arraignment] constitutes a violation of his right to a trial by jury as guaranteed under [ICRA]."); *Confederated Salish & Kootenai Tribes* v. *Peone*, 16 Indian L. Rep. 6136, 6137 (C.S. & K. Tribal Ct. 1989) ("This court must conclude that the failure of the accused to make a request for a jury trial constitutes a valid waiver only when that failure to request a jury trial is made knowingly and intentionally . . . ."); *Squaxin Island Tribe* v. *Johns*, 15 Indian L. Rep. 6010, 6011 (Sq. I. Tribal Ct. 1987) ("[T]he court finds that the defendant subsequently waived his right to trial by jury by knowingly and voluntarily failing to appear . . . ."); *see also Laramie* v. *Colville Confederated Tribes*, 22 Indian L. Rep. 6072, 6074 (Colv. Ct. App. 1995) ("[T]he fundamental right of a criminal defendant to a trial by jury cannot be diluted because of administrative difficulties.").

[7] Citing four state-law cases, the Community suggests that a waiver of the statutory right to trial by jury need not be knowing. We question whether these cases are relevant to our analysis, as they do not interpret ICRA. But even if relevant, they are readily distinguishable. In three of the cases, the court specifically instructed the defendant that he had a right to a jury trial *upon request*. *See State* v. *Vernon*, 356 N.W.2d 887, 889 (Neb. 1984); *Jackson* v. *State*, 644 N.E.2d 595, 596 (Ind. Ct. App. 1994); *State* v. *Farmer*, 548 S.W.2d 202, 205 (Mo. Ct. App. 1977). In the fourth case, the appellate court remarked that defendant's "attorney clearly had knowledge of the time frame within which to make a jury trial demand." *State* v. *Gordon*, 766 A.2d 75, 77 (Me. 2001). Moreover, the criminal defendant was represented by counsel in at least three of the four cases. *Gordon*, 766 A.2d at 76; *Vernon*, 356 N.W.2d at 889; *Farmer*, 548 S.W.2d at 205. The opinion in *Jackson* doesn't mention whether the defendant had an attorney at trial. 644 N.E.2d 595.

We hold that the Community denied Alvarez his right under ICRA to be tried by a jury.  Because denial of the right to a jury trial is a structural error, it requires automatic reversal.  *See Sullivan* v. *Louisiana*, 508 U.S. 275, 281–82 (1993).  We therefore need not reach Alvarez's alternative argument that the Community violated his confrontation right.

*                *                *

The judgment below is **REVERSED**.   This case is **REMANDED** to the district court with instructions to grant the petition for a writ of habeas corpus.

---

KOZINSKI, Circuit Judge, concurring:

This appeal gives us no occasion to consider a rat's nest of problems with the Community's justice system that may well provide future criminal defendants with avenues for habeas relief.  In 1999, we published an opinion expressing "doubt that a functioning appellate court exists" in the Gila River Indian Community.  *Johnson* v. *Gila River Indian Cmty.*, 174 F.3d 1032, 1036 (9th Cir. 1999).  Too few reforms have been implemented in the intervening years.  When the Community destroys its inventory of Defendant's Rights forms, it may also wish to reflect on whether it is proud to have: permitted Alvarez only five days to notice an appeal after being sentenced, the shortest such window I have ever heard of; incarcerated Alvarez for *nine years* without ever providing him assistance of counsel; declined to provide Alvarez with a notice-of-appeal form or any other post-trial guidance about how to take an appeal, *see Alvarez* v. *Tracy*,

773 F.3d 1011, 1024 (9th Cir. 2014) (Kozinski, J., dissenting); incarcerated Alvarez after his conviction in a facility with no law library, preventing him from conducting his own research on the Community's appeals procedure; failed to ensure that Alvarez was apprised of his rights on the record and by a judge, *id.* at 1034; permitted prosecutors to convict Alvarez on the basis of hearsay testimony, in plain contravention of his confrontation right; or faulted Alvarez for failing to seek habeas relief in Community court despite the fact that the Community's own court of appeals has issued an opinion indicating that habeas relief isn't available under the tribe's Code.

Regrettably, our decision today comes too late to give Alvarez any meaningful relief. He was released years ago after having spent most of his twenties in the Community's custody. But this case need not be a total loss. Perhaps the Community and others like it will take this opportunity to reconsider the dubious procedures they employ in their criminal courts.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I concur in the court's determination that the Gila River Indian Community deliberately waived its non-exhaustion defense. I respectfully dissent, however, from the court's conclusion that the Community denied Fortino Alvarez his "right, *upon request*, to a trial by jury" when Alvarez never requested a jury. Rather than analyze the scope of Alvarez's jury-trial right under the Indian Civil Rights Act, the majority

simply applies an unmoored balancing test without giving a single reason to do so.

I

As the majority recounts, in 2003 Fortino Alvarez struck his girlfriend with a flashlight, threatened her with a knife, hit her brother with the flashlight, and threatened to kill the whole family. The Community charged him with various crimes. Prior to a group arraignment, Alvarez received a copy of the Community's criminal complaint with a "Defendant's Rights" form attached. The Defendant's Rights form included the statement: "You have the right to a jury trial." The Community did not specifically notify Alvarez that he needed to request a jury trial. The rights were also read at the beginning of the group arraignment. At the arraignment, the court asked Alvarez whether he had any questions about those rights. He responded that he did not.

Later that year, Alvarez was convicted of most charges in a tribal-court bench trial in which he represented himself. At no point before or during the trial did Alvarez request a jury or even inquire about one. In due course, Alvarez filed a federal habeas corpus petition under 25 U.S.C. § 1303 challenging various convictions and sentences on the basis of nine claims. The district court, adopting the recommendation of a magistrate judge, dismissed all claims. On appeal, Alvarez challenges only the dismissal of two claims: (1) his claim that he was denied his right to be confronted with the witnesses against him,[1] and (2) his claim that he was denied his right, upon request, to a jury trial.

---

[1] Like the majority, I do not address Alvarez's confrontation rights.

II

A

"As separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority." *United States v. Bryant*, 136 S. Ct. 1954, 1962 (2016) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978)). "The Bill of Rights . . . , therefore, does not apply in tribal-court proceedings." *Id.* However, "persons subject to tribal authority can invoke other sources of individual rights. The two most prominent sources of these rights are tribal bills of rights . . . and federal statutes such as" the Indian Civil Rights Act of 1968 (ICRA), Pub. L. No. 90–824, § 202, 82 Stat. 73, 77–78 (codified as amended at 25 U.S.C. § 1302(a)). F. Cohen, *Cohen's Handbook of Federal Indian Law* § 14.03[1], at 944 (2012 ed.) [hereinafter *Cohen's*].

ICRA, "rather than providing in wholesale fashion for the extension of constitutional requirements to tribal governments, as had been initially proposed, selectively incorporated and in some instances modified the safeguards of the Bill of Rights to fit the unique political, cultural, and economic needs of tribal governments." *Martinez*, 436 U.S. at 62. Thus, in ICRA, "Congress accorded a range of procedural safeguards to tribal-court defendants 'similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.'" *Bryant*, 136 S. Ct. at 1962 (quoting *Martinez*, 436 U.S. at 57).

B

"In addition to other enumerated protections, ICRA guarantees 'due process of law.'"   *Id.* (quoting ICRA § 202(8)).  The majority concludes that the Community's apparent failure to notify Alvarez of the requirement to request a jury (the "demand requirement") was unfair, which sounds perhaps like a due process violation.  However, Alvarez has not argued, on appeal or in the district court, that the failure to notify him of the demand requirement violated his right to due process.  He argued below that numerous other aspects of his convictions violated his right to due process, but not the tribe's failure to provide notice of the requirement to request a jury.

Fear not.  The majority has devised a clever way to vindicate Alvarez's due process rights: ignore the text of ICRA and instead import a due-process balancing test.  Maj. Op. at 10–11 & n.5 (concluding that we should apply the test from *Randall v. Yakima Nation Tribal Court*, 841 F.2d 897, 900 (9th Cir. 1988)).   To its credit, the majority acknowledges that the *Randall* test was "developed in the context of challenges premised on" ICRA's due process right, § 202(8), and further recognizes that we have *never* applied the *Randall* test to a jury-trial claim under § 202(10).  Maj. Op. at 11 n.5.

What the majority does next, however, is both unexplained and troubling.  The majority does not state *why* we should apply an atextual balancing test to a claim under § 202(10).  Instead, it jumps straight to the conclusory determination that "the language and principle of *Randall* sweep beyond Section 202(8)."  Maj. Op. at 11 n.5.  With respect, this is not how we should decide cases.  We

determine the relevant standard to apply in a given case based on *reasons* to do so, not the *absence* of reasons to refrain from adopting some standard at random (or at will).

Importantly, Alvarez did not argue that we should apply the *Randall* test.[2] As a result, he waived any such argument, and the majority should not expect the Community to explain why the *Randall* test should not apply.

Moreover, we should not apply a test designed to evaluate generalized due process claims under § 202(8) when another ICRA provision, § 202(10), specifically addresses the right to a jury trial. In general, where a specific provision constitutes an explicit textual source of protection against a particular sort of government behavior, that provision, and not more generalized notions of due process, "must be the guide for analyzing" claims that the government engaged in prohibited behavior. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998); *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997); *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 805 (9th Cir. 2014) (en banc) (O'Scannlain, J., dissenting). We should apply this principle to analysis under ICRA because the procedural safeguards of ICRA largely mirror those of the federal constitution, both in content and the relative levels of generality of their protections.

Indeed, we have already applied this principle in construing ICRA. In *Tom v. Sutton*, we declined to apply the due process right in § 202(8) to find a right to appointment of counsel for indigent defendants because § 202(6) specifically

---

[2] Instead, he argued that the ICRA jury-trial right parallels the Sixth Amendment jury-trial right, so we should employ "federal constitutional standards" to evaluate his jury-trial claim.

addressed the right to counsel.  533 F.2d 1101, 1105 (9th Cir. 1976).

Thus, there are at least two good reasons not to import *Randall*'s due-process test to evaluate jury-trial claims.  Yet the majority adopts such test for its analysis without *any* countervailing reason to do so.[3]

### III

Instead of shrugging our shoulders and adopting a due-process test for no reason, we should construe ICRA's jury-trial provision and determine whether the Community violated Alvarez's right under such provision.

### A

Alvarez argues that ICRA's jury-trial right parallels the jury-trial right guaranteed by the Sixth Amendment.  It clearly does not.

### 1

Congress modified the safeguards regarding imprisonment and the criminal jury trial in the ICRA.  The Sixth Amendment provides:

---

[3] Further, I am not persuaded that it was unfair to require Alvarez to do *something* to invoke his rights.  Alvarez was told he had a right to a jury trial.  Alvarez failed to object, ask a question, or do anything when it was clear that the trial was proceeding without a jury.  And after the trial was over, he failed to appeal.  At a certain point, a defendant cannot sit on his rights and then claim unfairness when the trial does not turn out the way he wanted.

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

As originally enacted, the ICRA provided: "No Indian tribe in exercising powers of self-government shall . . .

> (6) deny to any person in a criminal proceeding the right to a speedy and public trial, to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, and at his own expense to have the assistance of counsel for his defense; . . .

> (10) deny to any person accused of an offense punishable by imprisonment the right, upon request, to a trial by jury of not less than six persons."

ICRA, Pub. L. No. 90–824, § 202, 82 Stat. 73, 77–78 (1968) (codified as amended at 25 U.S.C. §§ 1302(a)(6)–(8), (10) (2012)).

ICRA § 202(6) contained most of the same text as the Sixth Amendment, but it differed in key aspects. For instance, it did not provide for free counsel for indigent defendants, ICRA § 202(6) (counsel "at his own expense"), while the Sixth Amendment did so provide, *see Gideon v. Wainwright*, 372 U.S. 335 (1963). Also, § 202(6) did not provide a right to a jury trial.

ICRA § 202(10) provided a jury-trial right, but its text did not parallel the Sixth Amendment text at all. Indeed, the only commonality between the text of ICRA § 202(10) and the Sixth Amendment was that both contain the words "right to a," "trial," "by," and "jury." Subsection 202(10) expressly required a request to receive a jury, it did not require an impartial jury, and it did not require a jury "of the State and district wherein the crime shall have been committed." *Compare* ICRA § 202(10) *with* U.S. Const. amend. VI.

2

Critically, unlike the Sixth Amendment, ICRA provides a right to have a jury trial only *upon request*.

In 1986, Congress permitted tribes to impose a sentence of up to one year in jail. Indian Alcohol and Substance Abuse Prevention and Treatment Act of 1986, Pub. L. No. 99–570, § 4217, 100 Stat. 3207–146 (codified as amended at 25 U.S.C. § 1302(a)(7)(B)). At that time, the Sixth Amendment required a jury trial as the default for any crime punishable by more than six months in jail. *See Baldwin v. New York*, 399 U.S. 66, 69 (1970) (plurality). In federal court, a defendant would receive a jury trial for a non-petty offense unless (1) he waived a jury in writing, (2) the government consented, (3) the trial court sanctioned the

waiver, and (4) the waiver was made expressly and intelligently.  *See Singer v. United States*, 380 U.S. 24, 34 (1965).  The States had "adopted a variety of procedures relating to the waiver of jury trials in state criminal cases." *Id.* at 36–37.  Without a waiver, a jury trial was the default for "serious crimes."  *Duncan v. Louisiana*, 391 U.S. 145, 154 (1968) ("The laws of every State guarantee a right to jury trial in serious criminal cases . . . .").[4]

Thus, contrary to Alvarez's argument, ICRA's jury-trial right differs substantially from the Sixth Amendment's jury-trial right.  However, this conclusion merely raises the question: if the rights are different, then what right did Congress provide in ICRA?

---

[4] The Sixth Amendment does not require a jury trial for "petty offenses," for which the penalty does not exceed six months' imprisonment or a $500 fine, or both.  *See* 18 U.S.C. § 1(3) (1964) ("Any misdemeanor, the penalty for which does not exceed imprisonment for a period of six months or a fine of not more than $500, or both, is a petty offense."); *Cheff v. Schnackenberg*, 384 U.S. 379 (1966) (A "petty offense . . . does not require a jury trial.").  Indeed, at the time of ICRA's enactment in April 1968, three states did not require jury trials for longer periods of imprisonment: Louisiana only granted a jury trial in cases in which capital punishment or hard labor could be imposed; New Jersey's disorderly conduct offense carried a one-year maximum sentence but no jury trial; and New York State did not provide juries in New York City for crimes with a one-year maximum sentence.  *Duncan*, 391 U.S. at 146, 161 & n.33.  Shortly after ICRA's enactment, the Supreme Court confirmed that states need not provide a jury trial for "[c]rimes carrying possible penalties up to six months . . . if they otherwise qualify as petty offenses." *Id.* at 159.  Thus, ICRA § 202(10) provided a greater right than those available in federal court or in state court for offenses for which the penalty did not exceed six months.

B

1

The plain meaning of § 202(10) at the time of its enactment suggests that it did not obligate tribes to provide notice of the demand requirement. Subsection (10) provides: "No Indian tribe . . . shall . . . deny to any person . . . the right, upon request, to a trial by jury." Thus, at least one prohibition is clear in the statutory text: a tribe cannot refuse to grant a defendant's request for a jury trial. The tribe *did* notify Alvarez of his right to a jury trial, and there is no dispute that Alvarez did not request a jury.

Instead, the parties' dispute centers on whether § 202(10) obligated the tribe also to notify Alvarez of the requirement to request a jury. Do tribes deny the "right, upon request, to a trial by jury" by failing to notify defendants of the need to request a jury? Obviously, the plain text of § 202(10) does not explicitly state that a tribe must provide a defendant with notice of such requirement. The lack of any textual requirement that tribes notify defendants of the need to request a jury strongly suggests that Congress did not impose such a requirement.

2

Context reinforces that the right to receive a jury trial does not include a right to be notified of the need to request a jury trial.

In 1968, there existed both tribal courts established by tribes and Courts of Indian Offenses, which "were created by the Federal Bureau of Indian Affairs to administer criminal

justice for those tribes lacking their own criminal courts." *Santa Clara Pueblo*, 436 U.S. at 64 n.12; *see also Cohen's* § 4.04[3][c], at 263–64. Congress applied § 202, including the jury-trial right, to both types of courts. ICRA §§ 201–02. In a neighboring provision, § 301 of that statute, Congress directed the Secretary of the Interior also to establish a model code to govern the Courts of Indian Offenses:

> Such code shall include provisions which will (1) assure that any individual being tried for an offense by a court of Indian offenses *shall have the same rights*, privileges, and immunities under the United States Constitution as would be guaranteed any citizen of the United States being tried in a Federal court for any similar offense, (2) assure that any individual being tried for an offense by a court of Indian offenses *will be advised and made aware of his rights* under the United States Constitution, and under any tribal constitution applicable to such individual . . . .

Pub. L. No. 90–284, § 301, 82 Stat. 73, 78 (codified at 25 U.S.C. § 1311) (emphasis added). Thus, in federally established Courts of Indian Offenses, a model code would assure that defendants there both *have* rights—the full slate of rights provided by our Constitution—and that they *have notice* of these rights. The fact that Congress provided for both in separately enumerated provisions of § 301 strongly suggests that Congress viewed rights as distinct from notice of such rights. While a model code for Courts of Indian Offenses would provide both, Congress did not impose a model code on tribal courts established by tribes, such as the

court in which Alvarez was convicted. Instead, for such courts Congress only imposed the rights contained in § 202, without any notice requirement.

Consequently, I would conclude that Congress did not impose on tribes any obligation to notify defendants of the need to request a jury. Section 202(10) only required tribes to refrain from denying the right to a jury trial, but did not obligate tribes to notify defendants of the need to request a jury.

3

Substantive canons reinforce my conclusion that we should not construe § 202(10) to impose on tribes a duty to notify defendants that they must request a jury.

"Federal courts must avoid undue or intrusive interference in reviewing Tribal Court procedures." *Smith v. Confederated Tribes of Warm Springs*, 783 F.2d 1409, 1412 (9th Cir. 1986). In the specific context of ICRA, the Supreme Court has emphasized that "considerations of 'Indian sovereignty are a backdrop against which the applicable federal statute must be read.'" *Santa Clara Pueblo*, 436 U.S. at 60 (quoting *McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 172 (1973) (alterations omitted)). Most importantly, the Court has admonished, "Although Congress clearly has power to authorize civil actions against tribal officers, and has done so with respect to habeas corpus relief in [28 U.S.C. § 1303], a proper respect both for tribal sovereignty itself and for the plenary authority of Congress in this area cautions that we tread lightly in the absence of clear indications of legislative intent." *Id.* Absent any clear indications that § 202(10) requires the tribe to notify Alvarez

of the demand requirement, we should "tread lightly" and conclude that Alvarez has failed to show that the tribe violated his rights under § 202(10).[5]

---

[5] We should not give much, if any weight, to the tribal decisions discussed by the parties. First, we should not base our opinion on decisions issued by unrelated tribes. Alvarez makes no argument that the Gila River Indian Community's tribal courts would handle this issue in the same manner as other courts that have addressed the issue. The Community could interpret § 202(10) differently depending on the tribe's own needs, customs, and resources. One commentator has noted:

> Indian tribes are not all alike. Tribes range in size from tremendous to tiny. Some gaming tribes have per capita incomes that rival the richest towns in the United States while other tribes are some of the poorest communities in the country. Some tribes have adopted tribal court systems that largely mimic those present in the states surrounding them, while others have courts with little or no resemblance to Anglo-American justice systems.

Max Minzner, *Treating Tribes Differently: Civil Jurisdiction Inside and Outside Indian Country*, 6 Nev. L. J. 89, 89 (Fall 2005) (footnotes omitted). Thus, the panel should avoid imposing the decisions of unrelated tribes on the Community. To the extent that we give any weight to the tribal opinions, I note that in *Confederated Salish & Kootenai Tribes v. Peone*, 16 Indian L. Rep. 6136 (C.S. & K. Tr. Ct. 1989), the court stated: "In the event of a pro se defense, it is the accused's responsibility to be aware of his own rights . . . and failure to act in a timely manner on his own behalf is a burden the accused must bear alone. Even when the accused intends to obtain legal counsel the need for timely advice generally is the responsibility of the defendant." *Id.* at 6137.

Like the majority, Maj. Op. at 13 n.7, I question whether state-court decisions are relevant to our analysis. To the extent that we consider them, I note that several state-court decisions support the tribe's position. *See State v. McClinton*, 418 S.W.2d 55, 60–61 (Mo. 1967) (discussing

## C

Based on the plain meaning of the statutory text, the statute's context, and important considerations of tribal sovereignty, I would conclude that ICRA § 202(10) prohibits a tribe from refusing a defendant's request for a jury trial, but does not impose an affirmative obligation on tribes to notify defendants that they must request a jury. Because Alvarez did not request a jury, the Community did not violate his rights under § 202(10).

I respectfully dissent.

*State v. Larger*, 45 Mo. 510, 511 (1870)); *State v. Mangelsen*, 297 N.W.2d 765, 767–68 (Neb. 1980).